**UNITED STATES of America**

**v.**

**Louis FESTA**

**UNITED STATES of America**

**v.**

**Phillip J. PIRRELLO.**

**Crim. Nos. 60–49, 60–52.**

United States District Court
D. Massachusetts.

April 25, 1960.

Arlyne F. Hassett, Asst. U. S. Atty., Boston, Mass., for United States.

Francis J. DiHento and Thomas W. Lawless, Boston, Mass., for defendants.

WYZANSKI, District Judge.

In these companion cases, each defendant has filed, in accordance with Rule 41 (e) of the Federal Rules of Criminal Procedure, 18 U.S.C.A., a motion for return of property and suppression of evidence.

On October 30, 1959 United States Commissioner Farrell issued a warrant to any United States Marshal or any of his deputies to search premises known as Chick's Bargain Shoe Store, at 76–78 Meridian Street, at the intersection of Havre Street, East Boston, for adding machines, books, records, papers, notebooks, pencils, memoranda sheets, racing forms, other material used for registering bets, and money, "held and possessed in violation of Title 26 United States Code Sections 4401, 4411, 4412, and 7203 in that the special tax required by Section 4411 has not been paid for the year ending June 30, 1960." The moving parties admit the validity of this warrant for the search of property said to be held in violation of the Wagering Tax Act.

Armed with this warrant, Deputy Marshal Mahoney proceeded to the designated premises. He was accompanied by Pastore, Group Supervisor, Intelligence Division, Internal Revenue Service, and the following Special Agents of that Division: Daly, De Luca, Ferrick, and Sawtelle. Entering the premises, the Deputy Marshal read aloud the warrant and proclaimed to those inside "Remain where you are until we get straightened out." At that time Festa, one of the moving parties, was in the room.

Before the government party had arrived, Pastore had specifically told De Luca that if after the raid any person wished to enter the premises, such person should be admitted. He had added that anyone should be allowed to leave the premises after he had been questioned. Pastore implied that no one was to be allowed to leave before he had been interrogated by Treasury agents. De Luca and all the other Treasury agents involved in the raid followed these in-

structions and held until he had been questioned each person found upon or entering upon the premises. To carry out these instructions, government agents or deputy marshals were posted as guards at the doors.

One of the Treasury men, Special Agent Sawtelle, interrogated in turn Faretra Albano, and defendant Festa. Before Festa was questioned he was well aware of the general atmosphere of restraint. He had been on the premises when the deputy marshal entered. He had seen government men posted at the doors. He had observed others being examined. When he asked to go to the toilet he found himself escorted by a government agent. All these facts would have led any reasonable person to conclude, and Festa did conclude, that he was not at liberty to leave the premises before he permitted the Treasury men to question him and, if they wished, to discover what he had on his person.

Sawtelle did not caution Festa that he need make no statement. Nor did he inform Festa that he was at liberty to leave before submitting to questions and search. Some government agent directed Festa to empty his coat and pants. Festa, believing he lacked free choice, complied. The Internal Revenue agents, without so far as appears asking Festa's leave, picked up the contents, placed them in envelopes which are now Exhibits 7a and 7b, and retained the envelopes.

In the meantime, that is, after the raid had begun, the other defendant Pirrello drove down Havre Street. He was in an automobile which had been lent to him by its owner, Ralph De Angelo.

The Internal Revenue Agents, at least 24 hours before the raid, had probable cause to believe that this car was being used in violation of the Wagering Tax Act. Yet they had not sought to procure a warrant to seize or search the car. Special Agent Daly signalled Special Agent Ferrick to stop the car. Ferrick did so. Pirrello felt, and reasonably felt, that he was not free to proceed but must submit to interrogation, search, and di-rections as to where he should go. Ferrick or some other Treasury agent searched the car and removed the papers which constitute Exhibit 6. Daly said to Pirrello "accompany me" to Chick's. Pirrello felt, and, under the circumstances reasonably felt, that he had no option not to go along to Chick's.

On entering Chick's, Pirrello found himself in the atmosphere already described. He was required to stand against a wall. He watched others being interrogated. When he went to the toilet he was accompanied by a government agent. Pirrello believed, and correctly believed, that he was not free to leave at once. While waiting his turn Pirrello took out of his pocket and dropped on the floor certain envelopes, now Exhibit 5. He would not have disposed of these envelopes but would have kept them in his pocket if he had been free to leave the premises forthwith without interrogation.

From the foregoing recital it is evident that there are shadings of difference in the facts involving the way the government acquired the property formerly held by defendant Festa and the property held by defendant Pirrello. Separate analysis is, therefore, required. Yet each defendant's basic contention is that without a warrant of arrest or other authority of law government agents so restricted his liberty that they placed him under arrest, and that responding to the coercive aspects of such an unlawful arrest and without supposing he had a genuine option to refuse, he turned his property over to those agents. Each defendant's claim is implicitly bottomed on the guarantees of the Fourth and Fifth Amendments to the United States Constitution.

■ In analyzing each defendant's claim appropriate considerations are whether defendant was under arrest, whether the arrest was lawful, and if not whether defendant's action in making the property available to the government was the result of a free choice. If a person has been subjected to an unlawful arrest and if, while under that detention, he turned over property against his free

will, he is entitled to its return and the government is not allowed to use the property in evidence. Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed. 2d 134.

In Festa's case it is plain that he was under arrest. The proclamation of the deputy marshal, the posting of guards at the doors, the Treasury agents' action in holding men until they had been interrogated, and the escort imposed on persons going to the toilet show that Festa was under arrest. Arrest does not depend exclusively upon whether the officer declares or believes he is arresting. The question is not only what is said but what is done about freedom of movement. An officer who detains another against his will arrests him. A government agent who refuses to allow a suspect to go alone to the toilet interferes with his freedom of movement, and thus arrests him.

The arrest of Festa occurred, as the prosecutor has conceded, when Festa was not committing a crime. Moreover, the arresting officers had no reason to believe that he had committed a felony. Violation of the Wagering Tax Act is merely a misdemeanor. The situation thus was unlike Marron v. United States, 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231. See United States v. Di Re, 332 U.S. 581, 591, 68 S.Ct. 222, 92 L.Ed. 210; Henry v. United States, 361 U.S. 98, 100, 80 S.Ct. 168, 4 L.Ed.2d 134. It does not fall within the rule that an officer with power to arrest (a power, incidentally, held by a deputy marshal but not by a special agent of the Intelligence Division of the Internal Revenue Bureau) may arrest without a warrant for an offense committed in his presence or where he has reasonable grounds to believe that the arrested person has committed or is committing a felony. See United States v. Di Re, and Henry v. United States, both supra.

Nor can the arrest be justified on the ground that when an officer has a warrant to search for and seize property upon designated premises he has the additional authority to arrest without war-

rant persons who are on the premises when he executes the property warrant. So broad an authority does not exist. It is not the law that armed with a search warrant for a particular building an officer may "search all persons found in it." United States v. Di Re, 332 U.S. 581, 587, 68 S.Ct. 222, 225, 92 L.Ed. 210. Those cases which permit an officer armed with a search warrant for particular property to arrest a person found in possession of that property usually do so on the ground that the particular possession there involved was itself a crime, and thus there was a situation of an offense being committed in the presence of the searching officer. See, for example, the second paragraph in the opinion in Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697. Also, of course, there are cases where an officer having entered premises with a valid search warrant and found thereon a person engaged in criminal conduct was allowed to arrest him because of the offense committed in the officer's presence. Cf. Marron v. United States, 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231. However, those lines of authority do not apply to the case at bar, in view of the prosecution's concession that Festa was not committing a crime in the presence of any arresting officer.

Perhaps it is permissible for an officer validly executing a warrant to seize property having the characteristic of being easily removed or concealed, particularly property consisting of several different items, to order a person on the premises to remain until the officer can be certain that the detainee is not engaged in removing the property specified in the warrant. Admittedly this would be an arrest of the person; but if limited, as suggested, in time and purpose, it might be a reasonable arrest, search, and seizure. However, if there is such a limited right of arrest, it is inapplicable to the arrest of Festa. He was held for a time longer than would have been necessary to find out whether he was absconding with property covered by the search warrant. Moreover, the purpose of the inquiries

put to him was not exclusively to learn about property specified in the search warrant; nor did the contents of his pockets include property so specified; nor was the property taken from him property so specified. Finally, the inquiries were made by Treasury officers who were acting for their own department and not for the Deputy United States Marshal who was executing the search warrant.

█ Being unlawfully arrested, being faced with inquiries and demands from Treasury agents, Festa was not in a position readily to exercise freedom of choice. The options available to him were not even mentioned. For the Treasury agent did not give Festa any caution similar to the usual caution which an officer gives a person under arrest before taking from him a written statement. Cf. Mallory v. United States, 354 U.S. 449, 455, lines 23–24, 77 S.Ct. 1356, 1360, 1 L.Ed.2d 1479. See Federal Rules of Criminal Procedure Rule 5(b). Wigmore, Evidence, 3rd ed. §§ 847, 851. L. R. [1918] 1 K.B. 539, Patrick Devlin, The Criminal Prosecution in England, (Yale 1958) pp. 32, 34–37. Unless expressly reminded of his rights, a person *unlawfully detained* who turns over property to his captor might be presumed to have acted under duress. But in the case at bar it is not necessary to invoke such a presumption for the detailed findings recited at the outset of this opinion show, without the aid of any presumption, that Festa did act under duress. It follows that he is entitled to have Exhibits 7a and 7b returned to him and suppressed from any evidentiary use in this case.

█ We now turn to defendant Pirrello. When the Treasury agents stopped him, showed him their credentials, and told him to accompany them to Chick's store, Pirrello, who felt he had no option, was under arrest. Henry v. United States, 361 U.S. 98, 103, 80 S.Ct. 168, 4 L.Ed.2d 134. For this arrest, the agents had no warrant. Nor had they any statutory authority allowing them to make an arrest without a warrant. Hence the

arrest of Pirrello was unlawful and furnished no lawful basis for the search of the car. Henry v. United States, 361 U.S. 98, 102, 80 S.Ct. 168, 4 L.Ed.2d 134.

Nor can it be validly claimed that the doctrine of Carroll v. United States, 267 U.S. 132, 136, 45 S.Ct. 280, 69 L.Ed. 543 furnished an excuse for the Treasury agents who acted in the case at bar. These agents lacked the statutory authority to arrest which was conferred in the Carroll case. Moreover, they knew about the car's unlawful use in ample time to procure a search warrant.

Although Pirrello was not the owner of the car, and may not have been the owner of its contents, he had been given possession of the car by its registered owner. Pirrello therefore has standing to require that the contents of the car which were seized, and which now constitute Exhibit 6, be returned to him and be suppressed in evidence. Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697.

With respect to Exhibit 5 Pirrello's rights are equally clear. This Court has found that when Pirrello was arrested he had Exhibit 5 in his pocket. Therefore, he was in possession of the exhibit when he was arrested. Even if this finding had not been made, Pirrello would have the standing necessary to make a motion for the return of Exhibit 5. Where the government predicates the alleged guilt of a defendant upon his possession of an item, even though the defendant denies that he ever had possession, the defendant has the status to petition for the return and suppression of the item. "The possession on the basis of which petitioner is to be * * * convicted suffices to give him standing under any fair and rational conception of the requirements of Rule 41(e)." Jones v. United States, 362 U.S. 257, at page 264, 80 S.Ct. 725, at page 732, 4 L.Ed.2d 697.

Finally, the government argues that Pirrello did not hand over Exhibit 5 to the government, but by leaving it on the floor, abandoned the item. This ar-

gument ignores the obvious fact that Pirrello abandoned the exhibit solely because he was under unlawful arrest. If the arrest had been justified then it could properly be concluded that, without being put under unlawful pressure, Pirrello had abandoned Exhibit 5, had converted its contents into *bona vacantia*, and could not require their return or suppression. Abel v. United States, 362 U.S. 217, at page 241, 80 S.Ct. 683, at page 698, 4 L.Ed.2d 668. But where, as here, the arrest was unlawful, and Pirrello's disposition of Exhibit 5 was a response to that unlawful pressure, Pirrello retained such a possessory right in Exhibit 5 as to be entitled to have it returned to him and suppressed as evidence.

Motions granted.