George Lemuel PIGFORD, Appellant,

v.

UNITED STATES, Appellee.

No. 5379.

District of Columbia Court of Appeals.

Argued Oct. 13, 1970.

Decided Feb. 26, 1971.

Peter R. Kolker, Washington, D. C., for appellant.

John E. Rogers, Asst. U. S. Atty., with whom Thomas A. Flannery, U. S. Atty., John A. Terry and Charles H. Roistacher, Asst. U. S. Attys., were on the brief, for appellee.

Before HOOD, Chief Judge, KELLY, Associate Judge, and MYERS, Associate Judge, retired.

KELLY, Associate Judge:

Appellant was tried and convicted by a court sitting without a jury of two counts of receiving stolen property.[1] We hold that the court committed prejudicial error in admitting certain seized evidence and therefore reverse.

Between 7:00 and 8:00 p. m. on the evening of October 17, 1969, appellant was arrested on three outstanding traffic warrants as he sat in the driver's seat of his parked car at Fourteenth and Girard Streets, N.W., in the District of Columbia. The arresting officers gave appellant the choice of either driving his own car to Third District Headquarters or being transported by the police. He chose the former and upon arrival at the headquarters parked his car on the police lot as directed by the officers. At that time, there was ten-minute public parking allowed in front of the headquarters. There was also public parking on the street around the corner from the headquarters. When appellant was unable to post the necessary collateral he was put in the lockup. Prior to being placed in a cell, appellant was asked to put the contents of his pockets on the counter and he complied. Included in the items placed on the counter were the

1. D.C.Code 1967, § 22–2205.

keys to the car he had just parked on the police lot. The contents of appellant's pockets, including the car keys, were placed in an envelope which in turn was placed in a drawer where envelopes of that type were kept. Later that evening, approximately one hour after the arrest, the two police officers took the envelope out of the drawer and removed the car keys. They then proceeded to take what the Government claims was an inventory of the automobile, "check[ing] the glove compartment, underneath the seats and in the trunk" for "valuables * * * that should have been put on the property book and safeguarded." In the trunk the police found and removed to the station house a money order stamping (or check writing) machine and six blank money orders. Fishing equipment was left in the car as was a spare tire. After taking the "inventory" the police left the car with the trunk locked, but the front doors unlocked. Within a short time after appellant was placed in the lockup, a friend of his, a Mr. Frey, posted the necessary collateral.[2] Appellant was then released but the machine and blank money orders were retained by the police. Subsequently, it was discovered that the money orders had been stolen. Based on this information an arrest warrant was issued for appellant on October 20, 1969, and executed the same day. At the time of his arrest appellant was searched and three rounds of ammunition[3] and two credit cards bearing the name of Elmo White were seized.

At the hearing on a pretrial motion to suppress, appellant argued that this court's decision in United States v. Pannell, D.C. App., 256 A.2d 925 (1969), precluded the introduction into evidence of anything seized as a result of a search which occurred after his arrest on the traffic warrants. The motions judge accepted as true all of appellant's allegations, took no evidence, and denied the motion.[4]

At trial, counsel for appellant asked the court to hear the motion to suppress de novo. It appears from the record that the trial judge felt constrained to uphold the ruling of the motions judge, mainly on procedural grounds. He reasoned that there had been a pretrial hearing and to allow a de novo hearing on the same motion would deny the Government its right of appeal; on the other hand, appellant's rights were preserved on the record. Counsel for appellant objected to introduction of the check writing machine and money orders, on the ground that the so-called inventory was in reality a fishing expedition, and was a search which was not contemporaneous with appellant's arrest. Counsel further argued that the credit cards seized on October 20th should be excluded as "fruit of the poisonous tree." The objections were overruled.

Appellant puts forth three claims of error. While the other two claims[5] have merit, we do not find it necessary to discuss them since we conclude that the evidence should have been suppressed.

The Government does not contend that the police were conducting a search inci-

---

2. Mr. Frey's testimony is not clear as to the precise times of the arrest, payment of collateral, and release of Pigford, but it is apparent that even in his version of the occurrence no more than an hour or two, at most, elapsed between the arrest and the posting of collateral.

3. On appeal we are not concerned with the ammunition since appellant was found not guilty of the charge of possessing unregistered ammunition. D.C. Police Regs., Art. 53, § 2.

4. The facts recited in this opinion were elicited at trial. The Government presented no evidence or argument on the motion to suppress.

5. Appellant argues that: 1) the trial judge should have held a de novo hearing on the motion to suppress, and 2) the motions judge should have allowed appellant to present evidence at his pretrial hearing on the motion to suppress.

dent to an arrest,[6] or that there was probable cause to search the car,[7] but argues rather that the officers were taking appropriate steps to protect appellant's property while he was incarcerated. Its brief draws a parallel between the case at bar and Cotton v. United States, 371 F.2d 385, 392 (9th Cir. 1967), wherein the court stated that

> [t]he police have as much a duty to protect the property of a suspect as they have to protect the property of the rest of us, and that is what they did in this case by towing the car to the police impound. They also had a duty to keep a record of the property that they had impounded so that it could be returned to the suspect or to its owner in due course.
> * * *

We fail to see the factual parallel which the Government seeks to draw. In *Cotton* a police officer opened the front left door of the car which was about to be towed away in order to obtain and record on the tow slip the car's serial number which was on the door post. This is totally different from a situation where the doors, glove compartment and trunk were opened and items removed from the latter. The holding in *Cotton* that the opening of the door in order to obtain the serial number if a search at all, was a reasonable one, was never meant to apply in such a case. Indeed, the court in *Cotton* stated very clearly that "[i]f the agent had found any article or paper in the car, and such evidence had been used against Cotton at his trial or to discover other evidence, we would have a different case." (citations omitted.)[8]

We do, however, see a factual parallel between the case before us and United States v. Pannell, *supra,* wherein this court disapproved a purported inventory search of an automobile at the precinct after an arrest for a traffic offense. Minor factual differences are that in *Pannell* the inventory was taken in the afternoon before Pannell was booked on the charge of driving without a permit but after the police learned that his permit had been revoked for operating a vehicle under the influence of narcotics. We said:[9]

> We recognize the need of the Government to protect by proper inventory-taking both the property of those arrested and itself against future claims for property loss and damage by those taken into custody. Nevertheless, the police must first have had a lawful basis for acquiring custody of appellee's auto before they could employ safe-keeping methods such as an inventory of its contents. Williams v. United States, D.C.Mun. App., 170 A.2d 233 (1961).

We went on to distinguish those cases cited by the Government in which an inventory search was upheld after lawful custody of a vehicle was obtained pursuant to a forfeiture statute[10] or in which evidence was found in the course of taking measures to protect the car while lawfully in police custody.[11]

Whatever may be the law in other jurisdictions, under a variety of fact patterns,[12] *Pannell* controls our determination here of whether the police officers were conducting a proper inventory of the car or were

---

6. *See generally* Dyke v. Taylor Implement Mfg. Co., 391 U.S. 216, 88 S.Ct. 1472, 20 L.Ed.2d 538 (1968); Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964).

7. *See, e. g.,* Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).

8. 371 F.2d at 393.

9. 256 A.2d at 926.

10. Cooper v. California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967).

11. Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968). *See also* Fagundes v. United States, 340 F.2d 673 (1st Cir. 1965).

12. *See, e. g.,* St. Clair v. State, 1 Md.App. 605, 232 A.2d 565 (1967); State v. Criscola, 21 Utah 2d 272, 444 P.2d 517 (1968); Gagnon v. State, 212 So.2d 337 (Fla.1968).

**840**

engaging in a search violative of the fourth amendment. The Government claims that because cars parked on the headquarters lot had been burglarized before, it was necessary that an inventory be taken and valuable goods removed from the car in order to protect appellant's property and to protect themselves from subsequent charges of negligence or theft. However, we do not find this claim consistent with the course of action followed here.

The arresting officers were admittedly suspicious of appellant because he and others had been seen parked regularly on the corner where he was arrested and it was thought they might be "casing" a nearby restaurant for a possible robbery. It was against this background that within an hour of appellant's arrest, when collateral for appellant's release was being obtained, and without appellant's permission, a thorough search of the car was made and items removed from the trunk on a selective basis. After the search the officers failed to take the elementary precaution of locking the car doors. Moreover, upon appellant's release shortly thereafter, the property was not returned to him. These circumstances, we think, militate strongly against any conclusion that the search of the car was for inventory purposes; rather, they are persuasive that the search was "exploratory and therefore forbidden." [13] We hold the purported inventory search and seizure illegal.

Since this initial seizure was the basis for the issuance of an arrest warrant which in turn resulted in a search of appellant's person and a seizure of additional evidence, we conclude that the items removed from appellant at the time of his arrest on October 20, 1969 were "fruit of the poisonous tree" and also inadmissible in evidence.[14]

Reversed.

13. 256 A.2d at 927.

14. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1962).