No. 46,790

STATE OF KANSAS, *Appellee, v.* JOHN DOYLE ROBERTS, *Appellant.*

(504 P. 2d 242)

Opinion filed December 9, 1972.

*John C. Humpage,* of Humpage & Stewart, of Topeka, argued the cause and was on the brief for the appellant.

*John Mike Elwell,* county attorney, argued the cause, and *Vern Miller,* attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

OWSLEY, J.: This is an appeal from a conviction on two counts of

grand larceny (K. S. A. 21-533). Defendant was committed to the Kansas State Penitentiary for confinement according to law. He was released on bond pending an appeal to this court.

On November 6, 1969, the defendant and John M. Kearns were stopped by Officer Miguel B. Garcia in Lawrence, Kansas. The automobile in which they were riding fit the description of an automobile being sought in connection with a theft of shoes from the Lawrence Pay-Less Shoe Store. Kearns was driving and the officer asked him for his driver's license which he was unable to produce. The officer then advised Kearns he was going to issue a ticket for driving without a license. During this exchange, and while standing outside the automobile, Officer Garcia observed some shoes and drills in cardboard boxes in the back seat of Kearns' car, and some records in the front seat. All this time the defendant was seated in the front seat of the Kearns automobile.

A clerk from the shoe store identified both the defendant and Kearns as being the same persons who had taken the shoes. Officer Garcia then placed both the defendant and Kearns under arrest for the theft of the shoes. At the scene of the arrest, Officer Lemon observed two drills in the back seat and a stack of records on the front seat of the automobile. After Officer Lemon received express permission from Kearns to drive the automobile to the station, the defendant and Kearns were removed to the Lawrence police station by Officer Garcia. Officer Lemon then took custody of the car and the merchandise within it and, pursuant to Kearns' permission, he drove the automobile to the police station. When Officer Lemon arrived at the station about ten or fifteen minutes after leaving the scene of the arrest he removed the merchandise from the automobile.

Subsequently, it was determined that the two drills were missing from the Coast-to-Coast Store in Lawrence, and that the records (83) were from the Kroger Family Center in Lawrence. The defendant and Kearns were charged in two counts with the theft of the drills and the records by complaint on November 7, 1969, and were arrested on the same day.

The defendant was charged with petty larceny in connection with the theft of the shoes and he entered a plea of guilty on December 23, 1969, in the municipal court.

The defendant filed several pretrial motions including a motion to suppress, motion to discharge, motion to dismiss and abate, and a

motion for specific findings of fact and conclusions of law, all of which were overruled. All of the motions were renewed just before the trial and again overruled.

At the trial all of the above facts concerning the defendant's arrest and the seizure of evidence were developed by testimony. Other evidence at the trial revealed that the 83 records, state's Exhibit No. 3, were definitely from the Kroger Family Center, based upon the identification of tags on each individual record which are unique to that store. The value of the records was set between $160.00 and $200.00, and although the identifying witness, Larry Leffingwell, manager of the Kroger Family Center, could not determine whether specific records were missing, to his knowledge 83 records were not sold on November 6, 1969, and he believed the records were stolen. Leffingwell indicated an individual purchasing 83 records would be given a receipt and such a receipt would be lengthy. State's Exhibit No. 3 was received into evidence over the defendant's objection.

The trial also revealed that the two drills found in the car in which the defendant was a passenger, state's Exhibits No. 1 and No. 2, were definitely from the Coast-to-Coast Store and that they were missing on November 6, 1969. Robert Zimmerman, owner and manager of the Coast-to-Coast Store identified the drills, and the witness also identified Kearns as being the person he saw on November 6, 1969, in the front of his store where the drills were kept. The value of the drills was placed at $27.00 each. The state's Exhibits No. 1 and No. 2 were received into evidence over the defendant's objection.

The state rested and the defendant moved for a judgment of acquittal. The defendant renewed his motion for acquittal after presenting two defense witnesses. Both motions were overruled. All of the points raised by the defendant were renewed in his motion for a new trial.

The defendant first argues that the court erred in overruling defendant's pretrial motion to suppress evidence seized without the benefit of a search warrant, from the automobile in which defendant was a passenger. The defendant cites such cases as *Terry v. Ohio.*, 392 U. S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868; *Chambers v. Maroney,* 399 U. S. 42, 26 L. Ed. 2d 419, 90 S. Ct. 1975, reh. den. 400 U. S. 856, 27 L. Ed. 2d 94, 91 S. Ct. 23; *Coolidge v. New Hampshire,* 403 U. S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022, reh. den. 404 U. S. 874,

30 L. Ed. 2d 120, 92 S. Ct. 26; *Jones v. United States.*, 357 U. S. 493, 2 L. Ed. 2d 1514, 78 S. Ct. 1253; *Warden v. Hayden.*, 387 U. S. 294, 18 L. Ed. 2d 782, 87 S. Ct. 1642; *Harris v. United States.*, 331 U. S. 145, 91 L. Ed. 1399, 67 S. Ct. 1098, reh. den. 331 U. S. 867, 91 L. Ed. 1871, 67 S. Ct. 1527; *Abel v. United States.*, 362 U. S. 217, 4 L. Ed. 2d 668, 80 S. Ct. 683, reh. den. 362 U. S. 984, 4 L. Ed. 2d 1019, 80 S. Ct. 1056.

Defendant argues that from these decisions the search and seizure in this case was invalidated because the officers had no probable cause to believe the property was contraband, the seizure of the property was not incident to a lawful arrest, the seizure of the property was in no way connected with the arrest which was made, and there were no exigencies in connection with the incident which supported a warrantless search and seizure. Despite defendant's able presentation of this point, we are controlled by *State v. Edwards,* 197 Kan. 146, 415 P. 2d 231. The factual situation in the instant case is similar to *Edwards,* where we said:

"The car which was the object of the search and which yielded the purloined property was McGuire's, not the defendant's. It was neither owned by Edwards nor was it in his possession or under his control. Edwards did not claim any interest in the car or in the property taken therefrom. Consequently, he may not be heard to protest the search." (p. 147.)

*See, State v. Sumner,* 210 Kan. 802, 504 P. 2d 239.

We should point out that the defendant was a passenger in a car driven by the owner. He claimed no ownership or interest in the automobile and likewise claimed no ownership or interest in the property found in the automobile. We can draw no distinctions between the facts in *Edwards* and the facts in this case. The trial court did not err in failing to suppress this evidence.

Defendant complains of the use of the so-called "implied admissions" theory to establish corpus delicti in this case. This is another name for the theory, long followed in Kansas, that unexplained possession of recently stolen property provides the basis for an inference that the possessor is also the thief. The "unexplained possession" rule or "doctrine of implied admissions", as the parties refer to it in this case, is not a rule of law. It does not in itself establish the fact of a theft. The prosecution must still prove the larceny occurred; that is, it must prove corpus delicti. In *State v. Aten,* 203 Kan. 920, 457 P. 2d 89, we held that corpus delicti in larceny consists of two elements: ". . . (1) that the property was lost by

the owner; and (2) that it was lost by a felonious taking, each of which may be established by circumstantial evidence." (Syl. ¶ 3.) Since corpus delicti may be proven by circumstantial evidence, the "implied admissions" theory need not be relied on for its establishment.

There is no question that defendant was discovered in unexplained possession of recently stolen property valued at more than fifty dollars. Due to lack of witnesses to any acts of larceny and due to the inventory methods of both stores, it is impossible to specify when the items were taken, whether there was more than one larceny, how much was taken in each larceny, and whether there was more than one taking from each store. Although the "implied admissions doctrine" supplies a basis for an inference that the possessor stole the property, it does not supply a basis for an inference that the property was taken in a particular manner or at a particular time.

The defendant assigns as error the failure of the trial court to give an instruction on petty larceny. In Count I the defendant is charged with the theft of two drills, each worth the sum of $27.00. If the drills were stolen as one incident the resulting crime is grand larceny. If the drills were stolen at different times and by independent acts the theft of each would be petty larceny. Likewise, in Count II if the records were stolen in one incident the resulting crime would be grand larceny. However, if the records were stolen at different times by independent acts and on no one occasion did the stolen records exceed the value of $50.00, their theft would be the result of several acts of petty larceny.

The state urges that the defendant was guilty of grand larceny or he was guilty of nothing. The state claims that if the proof showed that defendant stole the records one by one or the two drills one at a time it would still require that the state prosecute for grand larceny. The state also claims that the taking of the two drills from the store and the taking of the 83 records from the store, even if accomplished by individual asportation of each item, would still indicate one design or scheme to deprive the owner of his property and therefore would justify a finding of grand larceny. The state also points out where the evidence indicates guilt of higher degree and does not tend to establish guilt of a lower degree it is not error to omit instructions on the lower degree.

The "single larceny doctrine" permits a trier of fact to consider a series of larcenies, embezzlements or other thefts to be the result

of a single larcenous scheme. If the total amount stolen is valued above the statutory amount, the defendant can be found guilty of grand larceny. In *State v. Hall,* 111 Kan. 458, 207 Pac. 773, it was invoked to find a defendant charged with a series of petty thefts from several departments of a single store guilty of grand larceny. The court held that the evidence supported the jury's decision that the larcenies occurred in a single day as part of a single plan. *State v. Gordon,* 146 Kan. 41, 68 P. 2d 635, involved a series of embezzlements over a period of months, each of which was less than the amount necessary to support grand larceny. The single larceny doctrine was invoked. The court said:

". . . If the practice was to take a series of amounts so that no one taking exceeded twenty dollars, it would be a fair inference from the evidence that the takings were the result of a scheme or plan. . . ." (p. 48.)

Both of these cases speak of the "single larceny doctrine" as a rule of evidence which will support a jury finding of grand larceny from evidence of a series of petty thefts which the jury infers to be part of a single plan, scheme, or single larcenous impulse.

When property is stolen by a succession of takings from the same owner and from the same place, each taking is a separate crime if it results from a separate impulse or intent. However, if it appears that a single incriminating impulse or intent is involved in the successive talkings, they constitute a single larceny.

The record in this case discloses evidence of the following facts:

"(1) Two drills missing from the Coast-to-Coast Store were found in the appellant's possession, as were 83 record albums from the Kroger Family Center.

"(2) When confronted with the chance to explain the presence of the goods, the appellant and the driver disclaimed knowledge of the presence of the items or ownership of the same.

"(3) The driver, Kearns, had been seen in the Coast-to-Coast Store in the area where the power drills were kept. . . .

"(4) No receipts for any of these items were found in the automobile, nor were they produced.

"(5) To the knowledge of the witness, Larry Leffingwell, manager of the Kroger Family Center, Lawrence, Kansas, no one purchased 83 record albums on November 6, 1969, but that anyone making such a purchase would receive a receipt and that such a receipt would be long."

From these facts the state requested the jury to conclude that the two drills were stolen as the result of a single continuing criminal impulse or intent on the part of the defendant, and that the 83 records were stolen in like manner. The established facts are not

persuasive as a basis for inferring in what manner and at what times the property was stolen. The jury was instructed that the unexplained possession of recently stolen goods created a basis for inferring the possessor was the thief. Using this inference, the jury might logically conclude the defendant was guilty of theft and that he should be punished. The jury might also conclude from the facts that the state has failed to establish the theft of the items was the result of a single continuing criminal impulse or intent. In this situation, defendant could have been found guilty of petty larceny. In the absence of an instruction on petty larceny the jury might have convicted the defendant of grand larceny even though they were not satisfied all the elements of grand larceny had been proven. To insure fundamental fairness, an instruction on petty larceny should have been given.

The defendant also claims error in failing to find he had been placed in jeopardy by his plea of guilty to a petty larceny charge in connection with the stolen shoes. The defendant argues that the prosecution for stealing the shoes arose out of and from the same criminal episode, design, transaction, and occurrence. The defendant's contention is without merit. Our position is well stated in 50 Am. Jur. 2d, Larceny, § 3, pp. 154, 155, as follows:

". . . [I]t is well settled that if, on the same expedition, there are several distinct larcenous takings, as the taking of the goods of one person at one place, and afterward the taking of the goods of another person at another place, and so on, as many crimes are committed as there are several and distinct takings, and this is true although the thefts may all have been committed in rapid succession and in pursuance of a formed design to steal. . . ."

The proof pertaining to the charge of the theft of property from the Pay-Less Shoe Store was patently different from the proof necessary to establish the theft of drills from the Coast-to-Coast Store and the theft of records from the Kroger Family Center. In *State v. Pierce, et al.,* 205 Kan. 433, 469 P. 2d 308, we said the test for determining identity of offenses is, ". . . whether each requires proof of a fact which is not required by others." (Syl. ¶ 3.)

The judgment is reversed and the case remanded with directions to grant a new trial.