No. 47,655

State of Kansas, *Appellee*, v. Jack Boster, *Appellant*.

(539 P. 2d 294)

Opinion filed July 17, 1975.

*J. Stanley Hill*, of Hutchinson, argued the cause and was on the brief for the appellant.

*Richard L. Hathaway*, assistant county attorney, argued the cause, and *Curt T. Schneider*, attorney general, and *Porter K. Brown*, county attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

Owsley, J.: Defendant, Jack Boster, appeals from a criminal con-

viction of burglary (K. S. A. 21-3715) and theft (K. S. A. 21-3701). The principal issue before this court concerns the constitutional validity of an inventory search of a vehicle driven by defendant and impounded by the police pursuant to defendant's arrest on a traffic violation. Because of the relevance of the circumstances to the constitutional question, the following facts are significant to this appeal.

On the night of November 22, 1973, a burglary took place at Crupper's Furniture and Appliance Store in Reno County, Kansas. Taken from the store were numerous home entertainment items, including television sets and stereos. The following day, George Overstreet, a patrolman with the Salina Police Department, received a dispatch over the police radio notifying him that two suspicious vehicles were parked in front of a tavern in Salina, Kansas. One of the vehicles was described as a 1967 green Pontiac and it was reported that a large amount of coins had been seen lying on the front seat of the car.

A short time later Officer Overstreet observed defendant, with a passenger, driving away from the tavern in the Pontiac. The other vehicle was following them. The two cars had gone only a block when they were stopped by Overstreet. Defendant and his passenger, Robert Wing, were ordered out of the car and frisked. When defendant could not produce a driver's license upon request, he was handcuffed and taken to the police station in the patrol car. Overstreet ordered the passenger, Wing, to drive the Pontiac and follow the patrol car to the police station. The officer did not notice any coins lying on the car seat at that time. He did not inquire as to the ownership of the car.

At the police station defendant was unable to post bond or pay his fine, so he was booked and jailed. When it was discovered that defendant was going to be jailed, a warrantless inventory search was made of the Pontiac as was the customary procedure prior to impoundment of a vehicle. Although the police did not know at that time who owned the car, it was later determined that the Pontiac was owned by Lloyd Shipman, the driver of the second car.

Pursuant to the inventory of the vehicle, the police searched the trunk where they found a large container of coins, a portable television, a tape player, a turntable, two speakers and two amplifiers. These items were placed in the evidence locker and the vehicle was towed to a fenced lot for impoundment. Later, the serial numbers

were sent to the National Crime Information Center and the property was discovered to be stolen.

Detectives Huff and Hindman of the Salina Police Department were contacted and authorized to begin an investigation. Detective Huff learned from the Reno County sheriff's office that the merchandise was from Crupper's Furniture and Appliance Store. Questioning of defendant and the other parties continued throughout the afternoon. Defendant was shown the items of property discovered in the car trunk, and shortly thereafter defendant allegedly confessed to the police that he, along with Richard Bentley and Lloyd Shipman, burglarized the appliance store.

Prior to trial on the merits, defendant moved the court for an order suppressing the introduction into evidence of all property taken from the trunk of the automobile driven by him on the day of his arrest, and for an order suppressing any testimony relating to said property. Defendant further moved the court for an order suppressing his confession. In support of his motion, defendant argued the search and seizure of personal property in the car did not occur at any time or place contemporary with his arrest by the Salina police and that said search and seizure occurred at the police station under the guise of an "inventory search" and was not conducted with a search warrant. Defendant further stated that permission was not given to search the vehicle, and that such a search was contrary to the Fourth Amendment to the Constitution of the United States, to Section 15 of the Bill of Rights of the Constitution of the State of Kansas, and to K. S. A. 22-2501, relating to searches without a search warrant.

In a comprehensive memorandum opinion filed on February 21, 1974, the district court of Reno County, Kansas, set forth the applicable case law, recognized there was a definite split of authority, and declared the police inventory search and seizure of the items contained in the trunk of the vehicle was lawful. Defendant's motion to suppress was accordingly denied. The trial was ordered to proceed as scheduled and defendant was found guilty of burglary and theft.

We note as a preliminary matter that the state raises a question as to the standing of defendant to object on constitutional grounds to the search of the automobile. It is the state's argument that defendant has done nothing more than allege a custodial interest in the car by virtue of the act of driving. This, it claims, is insufficient to accord standing to the defendant.

We have held that one who seeks to challenge the legality of a search as a basis for suppressing relevant evidence must first allege, and if disputed he must establish, that he was the victim of the invasion of privacy. To establish a sufficient interest, a movant must claim either to have a proprietary or possessory interest in the premises searched, or to have owned or possessed the seized property. (*State v. Sumner,* 210 Kan. 802, 504 P. 2d 239; *Jones v. United States,* 362 U. S. 257, 4 L. Ed. 2d 697, 80 S. Ct. 725; *Brown v. United States,* 411 U. S. 223, 36 L. Ed. 2d 208, 93 S. Ct. 1565; *Head and Cummings v. State,* 246 Miss. 203, 136 So. 2d 619.)

On numerous occasions we have applied this principle to the search of an automobile and held that one who is neither an owner nor in possession of an automobile lacks standing to invoke the constitutional guarantee of immunity from unreasonable search and seizure. (*State v. Edwards,* 197 Kan. 146, 415 P. 2d 231; *State v. Roberts,* 210 Kan. 786, 504 P. 2d 242.) In *Edwards,* the automobile searched was not owned by the defendant, nor was it in his possession or control. The defendant therein did not claim any interest in the car or in the property taken therefrom. Consequently, we held the defendant lacked standing to protest the search.

Similarly, we denied a motion to suppress for lack of standing in *Roberts,* where the defendant was only a passenger in the car that was searched and he claimed no ownership or interest in it.

The situation confronting us in the instant case is somewhat different. Here, defendant was the driver of the vehicle at the time he was arrested. He had actual possession and custody of the automobile, with the apparent consent of the owner, Lloyd Shipman, who was following in the second car. Under these circumstances, defendant had a sufficient possessory interest in the automobile to justify a reasonable expectation of privacy and to assert his constitutional rights against unreasonable search and seizure.

We find support for this result in the holdings of other courts which have been faced with similar factual settings. In *United States v. Festa,* 192 F. Supp. 160 (Mass. 1960), the court said:

"Although Pirrello [co-defendant] was not the owner of the car, and may not have been the owner of its contents, he had been given possession of the car by its registered owner. Pirrello therefore has standing to require that the contents of the car which were seized, . . . be returned to him and be suppressed in evidence. Jones v. United States, 362 U. S. 257, 80 S. Ct. 725, 4 L. Ed. 2d 697." (p. 164.)

Again, in *State v. Hoover,* 219 Or. 288, 347 P. 2d 69, the court reached the same conclusion:

"We note that the defendant was driving a borrowed car. However, we think that a bailee has an interest of sufficient substance to fall within the constitutional protection. [Citations omitted.] The circumstances of the bailment are not set out with clarity in the evidence. One might infer that the automobile was loaned to the defendant alone or to the group as a whole. But even if the automobile was loaned to the entire party the defendant's interest was not so tenuous as to debar him from asserting his constitutional right against unlawful search." (p. 296.)

Although we have determined that defendant has standing to object to any evidence obtained as a result of an unconstitutional search and seizure, it is necessary to first establish whether there has been a "search" within the meaning of the Fourth Amendment. Defendant contends any exploration of an individual's automobile, pursuant to police impoundment procedure, is a search within the context of the Fourth Amendment and the Kansas Bill of Rights. We are aware there is authority to the effect that an inventory search does not fall within the ambit of the Fourth Amendment protections. (See, *People v. Sullivan,* 29 N. Y. 2d 69, 323 N. Y. S. 2d 945, 272 N. E. 2d 464, 48 A. L. R. 3d 527; *State v. Wallen,* 185 Neb. 44, 173 N. W. 2d 372, cert. den. 399 U. S. 912, 26 L. Ed. 2d 568, 90 S. Ct. 2211; *St. Clair v. State,* 1 Md. App. 605, 232 A. 2d 565.) These cases have generally reasoned that a police inventory of the contents of an automobile does not constitute a "search" when it is not done with a view to discovering contraband or evidence of crime. In our opinion such a position is based on an overly technical approach to the constitutional protections against unreasonable searches and would place the police in the highly anomalous situation of being able to conduct a general exploratory "inventory" when they did not have sufficient justification to get a search warrant. The sounder view, as we see it, is to recognize that all intrusions by the police upon the privacy of an individual, including an inventory search, are subject to the Fourth Amendment requirement of reasonableness. We agree with the comment in Footnote 15, p. 18, in *Terry v. Ohio,* 392 U. S. 1, 20 L. Ed 2d 889, 88 S. Ct. 1868:

"In our view the sounder course is to recognize that the Fourth Amendment governs all intrusions by agents of the public upon personal security, and to make the scope of the particular intrusion, in light of all the exigencies of the case, a central element in the analysis of reasonableness. [Citations omitted.] This seems preferable to an approach which attributes too much significance to an overly technical definition of 'search,'. . . ."

The Fourth Amendment to the United States Constitution guarantees that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, . . ." A similar provision is included in Section 15 of the Kansas Bill of Rights. The legislature of this state has directed that incident to a lawful arrest a person and the area within his immediate presence may be reasonably searched for the purpose of protecting the officer, preventing escape, or discovering the fruits and instrumentalities of the crime. (K. S. A. 22-2501.) An inventory search constitutes a substantial invasion into the privacy of an individual and, regardless of the benevolent purposes, such a search should be subject to the test of reasonableness created by the constitutional guarantees.

The constitutional protections of the Fourth Amendment have been extended by the courts to include the search of automobiles, but it has been repeatedly emphasized that the search of cars or other movable objects cannot be treated in the same manner as the search of a house. (*Cooper v. California,* 386 U. S. 58, 17 L. Ed. 2d 730, 87 S. Ct. 788; *Preston v. United States,* 376 U. S. 364, 11 L. Ed. 2d 777, 84 S. Ct. 881.) In either instance, the test remains whether the search was reasonable in light of all the circumstances. Naturally, we are guided by these general principles in our review of this case, but we agree with the recent characterization that the controlling decisions in this area "suggest that this branch of the law is something less than a seamless web." (*Cady v. Dombrowski,* 413 U. S. 433, 37 L. Ed. 2d 706, 93 S. Ct. 2523.)

The burden of proof to show the lawfulness of a Fourth Amendment search and seizure rests upon the state. In the instant case the state does not seek to justify the search as being incident to a lawful arrest. Clearly, the search was too remote in time to fall within that exception to the search warrant requirement. (See, *Preston v. United States,* supra.) The state does not argue that defendant consented to the search, or that there was probable cause to believe the vehicle contained contraband or evidence of a crime. Instead, the state tells us this intrusion upon defendant's privacy by way of an inventory search was justified in light of the purpose to be served; that is, a thorough inventory search of the entire vehicle was both reasonable and desirable in order to protect any valuables contained therein, and to protect the police and the storage bailee from tort claims which might later be asserted. The state reasons since the purpose of the inventory is to safeguard

valuables, it would not logically follow that the police should be prevented from inventorying the locked and enclosed areas of an automobile, which it claims would have a greater likelihood of containing valuables. Thus, it is the argument of the state that it is both necessary and reasonable for the police to conduct an inventory search of the entire vehicle, including the trunk and other enclosed areas, so they may fully protect the defendant and insulate themselves from possible liability.

An inventory search cannot be valid unless the police initially obtain lawful custody of the vehicle. (*Pigford v. United States*, 273 A. 2d 837 [D. C. App. 1971]; *People v. Nagel*, 17 C. A. 3d 492, 95 Cal. Rptr. 129; *United States v. Pannell*, 256 A. 2d 925 [D. C. App. 1969]; *State v. Singleton*, 9 Wash. App. 327, 511 P. 2d 1396.) The impoundment of a vehicle by the police at the station house or other place of safekeeping is lawful if authorized by statute or ordinance. (*State v. Singleton*, supra.) In the absence of such express authority, it has been held that police may still be considered to have lawful custody of a vehicle when there are "reasonable grounds" for impoundment. (*State v. Montague*, 73 Wash. 2d 381, 438 P. 2d 571; *State v. Jones*, 2 Wash. App. 627, 472 P. 2d 402; *State v. Singleton*, supra.) In *Singleton*, the Washington Court of Appeals gave the following examples of what might be considered reasonable grounds for impoundment:

"Reasonable cause for impoundment may, for example, include the necessity for removing (1) an unattended-to car illegally parked or otherwise illegally obstructing traffic; (2) an unattended-to car from the scene of an accident when the driver is physically or mentally incapable of deciding upon steps to be taken to deal with his property, as in the case of the intoxicated, mentally incapacitated or seriously injured driver; (3) a car that has been stolen or used in the commission of a crime when its retention as evidence is necessary; (4) an abandoned car; (5) a car so mechanically defective as to be a menace to others using the public highway; (6) a car impoundable pursuant to ordinance or statute which provides therefor as in the case of forfeiture. The mere commission of one or more of the 27 bailable traffic offenses listed in JTR T2.03 (m) does not necessarily provide reasonable cause for impoundment. . . . There is even case support for the view that if the driver cannot present his driver's license when arrested on a traffic violation, impoundment on that account is not required. *People v. Nagel, supra; United States v. Pannell*, 256 A. 2d 925 (D. C. App. 1969)." (pp. 332, 333.)

Our statutes in effect at the time of the impoundment provided that a police officer was authorized to remove any vehicle found standing upon the highway when any of the following conditions were met:

"(1) Report has been made that such vehicle has been stolen or taken without the consent of its owner, or

"(2) The person or persons in charge of such vehicle are unable to provide for its custody or removal, or

"(3) *When the person driving or in control of such vehicle is arrested for an alleged offense for which the officer is required by law to take the person arrested before a proper magistrate without unnecessary delay.*" [Emphasis added.]   (K. S. A. 1973 Supp. 8-571 [c]; Repealed, L. 1974, ch. 33, § 8-2205; July 1.)

An "offense for which the officer is required by law to take the person arrested before a proper magistrate without unnecessary delay" was set forth in K. S. A. 1973 Supp. 8-5,127a (Repealed, L. 1974, ch. 33, § 8-2205; July 1). That section provided that whenever a person was stopped by police for any traffic violation not amounting to a felony, he was to be taken to the magistrate without unnecessary delay in either of the following cases:

"(a) When the person demands an immediate appearance before a magistrate; or

"(b) In any other event when the person is issued a traffic citation by an authorized person and refuses to give his written promise to appear in court as hereinafter provided."

In the instant case neither of these conditions was met. There is nothing to indicate that defendant requested an appearance before a magistrate or refused to give his written promise to appear in court. To the contrary, all the evidence in the record, and inferences fairly drawn therefrom, indicates defendant had no choice in the matter as the police officer ordered the passenger to drive the vehicle to the police station.

Defendant contends if there is an alternative to impoundment it must be utilized; otherwise, the police cannot obtain lawful custody of the vehicle. Thus, defendant argues the Salina police had the option of allowing the passenger or his friends in the other car (one of whom was the owner of the vehicle) to drive it to a place of their choosing in Salina rather than automatically impounding and searching the vehicle. There was no reason at that time to suspect the car contained contraband, since defendant was only charged with driving without a license. Given these alternatives, defendant contends the police did not have legal custody of the automobile; and, when they did take such possession of the vehicle in derogation of defendant's possessory rights therein, the impoundment was unlawful.

As previously noted, the burden is on the state to make a showing

that it had legal custody of the vehicle prior to the search. (*Williams v. United States,* 170 A. 2d 233 [D. C. App. 1961]; *People v. Nagel,* supra; *State v. Singleton,* supra; *Virgil v. Superior Court,* 268 C. A. 2d 127, 73 Cal. Rptr. 793.) The state's only argument in this regard is that the police officer did not know who owned the car at the time of the impoundment and inventory. The state concludes "[i]t would hardly be prudent, or even lawful, for the police, operating under the information available at the time, to exercise an alternative that could conceivably consist of placing the chattel in a situation that would act in derogation of the owner's interest."

We are not satisfied with the state's justification for the impoundment of the vehicle driven by defendant. Clearly, the police were not authorized to remove the vehicle under the provisions of K. S. A. 1973 Supp. 8-571 (*c*) (1) or (2). Although the police might have been suspicious of the car, there had been no report that it had been stolen and Officer Overstreet did not ask who owned the car or whether the driver had a registration card. The police could not argue that defendant was unable to provide for its custody since defendant, his passenger, or one of his other friends could have driven the car to another place. In fact, it is not clear from the record why the car could not have been left where it was when stopped by the police. Finally, the impoundment was not authorized under 8-571 (*c*) (3), since the offense of driving without a license is not one for which the officer is required by law to take the person arrested before a magistrate without unnecessary delay. (See, K. S. A. 1973 Supp. 8-5,127a.) There has been no showing by the state that the car was illegally parked or obstructing traffic, or that defendant was incapable of dealing with the car. Although the police apparently had information that the car contained a large number of coins, this alone did not justify the removal of the vehicle. (See, *State v. Singleton,* supra.) Neither the arrest of defendant for driving without a license nor the circumstances surrounding his arrest had any connection with the need for police custodial care of the car. As the court reasoned in *People v. Nagel,* supra:

". . . However unlike the situation in which the driver, the sole occupant, was drunk or injured, defendant was capable of moving his automobile; he was sober and unhurt and able to drive. He had been driving when stopped by police, and while he could present no driver's license (see § 12500, Veh. Code), under the direction and in the company of one of the officers defendant could have driven his vehicle to a legal parking space, parking lot or to Hollywood station. No reason appears why he could not have taken charge of his own vehicle and driven it under the direction of an officer to a nearby place of

safekeeping which, after all, was the only legitimate purpose under the facts known at the time for which custody of the vehicle could have been taken. A reasonable alternative would have been for one of the officers to move it to a place of safety. . . . This is not a case in which the police had to either tow it from the scene and store it or leave it unattended in an illegal parking zone." (p. 497.)

We do not disapprove the impoundment of vehicles under proper circumstances. We recognize the necessity of the state to protect by appropriate inventory measures both the valuables of the arrested person and its possible liability to tort claims. Nonetheless, the police must first have legal custody of a vehicle before making an inventory of its contents. We hold only that under the circumstances of this case the police custodial care of the vehicle driven by defendant was neither necessary nor reasonable, and as a consequence the police had no legal justification for impounding the car. This being true, the subsequent inventory search was invalid, and all evidence discovered as a result of the search was inadmissible.

Although we are satisfied with the soundness of this conclusion, we believe there is an equally compelling reason for suppressing the evidence. It is clear that even if the police had legal custody of the automobile, it would not of itself dispense with the constitutional requirements imposed by the Fourth Amendment. (*Chambers v. Maroney,* 399 U. S. 42, 26 L. Ed. 2d 419, 90 S. Ct. 1975; *Cooper v. California,* supra.) It is still necessary that the search be reasonable under all the circumstances. The inventory search has traditionally been justified on the grounds that it is necessary to protect any valuables within the automobile and to protect the bailee who stores the vehicle. This rationale has come under increasingly frequent criticism. (See, *Mozzetti v. Superior Court,* 4 C. 3d 699, 94 Cal. Rptr. 412, 484 P. 2d 84; Szwajkowski, "The Aftermath of Cooper v. California: Warrantless Automobile Search in Illinois," 1968 Univ. of Ill. Law Forum 401; Nelson, "*Chimel v. California:* A Potential Roadblock to Vehicle Searches," 17 U. C. L. A. L. Rev. 626.) We agree that these reasons alone will not justify a complete search of an impounded vehicle. In determining what constitutes a reasonable inventory search, we must also consider the competing interest of the vehicle owner or driver in maintaining the privacy of his personal effects.

Defendant contends the police should be permitted to inventory and take note of only those items in the impounded vehicle that are in "plain view." Under this rule, any inventory search beyond what

could be seen in the passenger compartment of an automobile would go beyond the permissible scope of a reasonable search under the Fourth Amendment, and the search of the trunk of the vehicle driven by defendant would be unreasonable.

Support for this view is found in *Mozzetti v. Superior Court,* supra. That case arose out of the warrantless search of an unlocked suitcase observed by the police on the rear seat of an impounded vehicle during a routine police inventory. In the process of searching the entire car, including the glove compartment and trunk, the police discovered a bag of marijuana in the unlocked suitcase. As in the instant case, the search could not be justified on any basis other than the inventory of an impounded vehicle. The majority opinion was quick to disapprove those cases which had suggested a police inventory might be validated without reference to the requirements of the Fourth Amendment. As the court correctly pointed out:

"It seems undeniable that a routine police inventory of the contents of an automobile involves a substantial invasion into the privacy of the vehicle owner. . . . Merely because the police are not searching with the express purpose of finding evidence of crime, they are not exempt from the requirements of reasonableness set down in the Fourth Amendment. Constitutional rights may not be evaded through the route of finely honed but nonsubstantive distinctions." (pp. 705, 706.)

The California court rejected the argument of the state that an inventory search into closed areas was reasonably necessary to protect the defendant's personal property from loss or to protect the police from unfounded tort claims. It is sufficient, said the court, if the windows are rolled up, doors locked, and keys returned to the owner. If an inventory search is to be made, its scope must be limited to property in plain sight. The rule was expressed in the following language:

"We have no doubt that the police, in the course of such valid protective measures, may take note of any personal property in *plain sight* within the automobile being taken into custody. Any objects clearly visible without probing—including the suitcase in this instance—may be listed in an inventory or other police report. . . ." (p. 707.) [Emphasis added.]

We agree generally with the approach taken by the court in *Mozzetti* and consider it to represent the better reasoned position with regard to the validity of inventory searches. Valuables locked in the trunk of an automobile, as was the situation in the instant case, present no great danger of theft. We feel that any need to protect such items is outweighed by the countervailing interest of the individual in the privacy of the enclosed areas of his car.

None of the United States Supreme Court cases dealing with inventory searches provide much guidance, as they can all be distinguished on the basis of their peculiar facts. In *Preston v. United States,* supra, the defendant was arrested on a vagrancy charge while sitting in a parked automobile. The car was towed to the police garage where it was thoroughly searched. Based on evidence discovered in the trunk of the car as a result of the search, the defendant was convicted of conspiracy to commit robbery. On certiorari, the United States Supreme Court reversed, holding that the evidence obtained as a result of the search was inadmissible since it could not be justified as being incident to a lawful arrest. There was no mention of the police authority to search pursuant to an inventory at the stationhouse.

The holding of the *Preston* case was distinguished in the later case of *Cooper v. California,* supra, on the ground that in *Preston* there was no relationship between the arrest for vagrancy, the reason for seizing the vehicle, and the reason for searching it. In *Cooper,* the defendant was arrested on a narcotics charge and his automobile was impounded as "evidence" pursuant to a state statute permitting the forfeiture of vehicles used to transport narcotics. A warrantless search of the automobile conducted a week later was upheld by the court on the basis of the close relationship between the reason for the arrest of the defendant and the reason for the subsequent search of the automobile. The court emphasized that the test was the reasonableness of the search under all the circumstances and that it would be "unreasonable to hold that the police, having to retain the car in their custody for such a length of time, had no right, even for their own protection, to search it." (pp. 61, 62.)

In the per curiam opinion handed down in *Harris v. United States,* 390 U. S. 234, 19 L. Ed. 2d 1067, 88 S. Ct. 992, the court upheld the admissibility of evidence discovered in "plain view" during a search of an impounded vehicle. The case is distinguishable, however, based on the fact the car had been seized as evidence of a robbery. In a concurring opinion, Mr. Justice Douglas assumed that *Preston* survived this opinion since the police in *Harris* were performing their duty to protect the car and were not engaged in an inventory or other search of the car.

Other state and federal jurisdictions have considered the question of the reasonableness of an inventory search of an impounded vehicle and have reached differing results. In an article entitled,

"Lawfulness of 'Inventory Search' of Motor Vehicle Impounded by Police," 48 A. L. R. 3d 537, the annotator has collected and analyzed most, if not all, of the cases dealing with this subject. Although broad generalizations in this area of the law are to be avoided, we agree with the annotator's conclusion that it is a universally accepted rule that the police may take note of any personal effects within plain sight in a lawfully impounded automobile. We concur with those courts which have held that an inventory search will not be upheld where it is shown that the police acted in bad faith in conducting the inventory, and used it as a subterfuge for a warrantless search. (See, *Pigford v. United States*, supra; *State v. Montague*, supra.)

In *Pigford*, the defendant was arrested on three outstanding traffic warrants as he sat in the driver's seat of his parked car. When the defendant was unable to post the necessary collateral he was "put in the lockup." Approximately one hour later the police made an inventory search of the vehicle, checking the glove compartment and trunk. In the trunk the police found a money order stamping machine and six blank money orders, all of which were later determined to be stolen. The District of Columbia Court of Appeals held that the search of the defendant's automobile was in violation of the Fourth Amendment and the evidence was therefore held to be inadmissible. A persuasive factor for the court in reaching that conclusion was the circumstances under which the arrest and search took place. Rather than appearing to be an innocent inventory of the vehicle to protect the owner of the car, the circumstances pointed to a purposefully disguised exploratory search. The arresting officers were admittedly suspicious of the defendant as they thought he might be "casing" a restaurant for a possible robbery. After the search the officer failed to take the elementary precaution of locking the car doors. Since the initial seizure was illegal, items removed from the defendant as a result of the issuance of an arrest warrant were likewise inadmissible as the "fruit of the poisonous tree." (*Wong Sun v. United States*, 371 U. S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407.)

It would serve no purpose to further recite cases from other jurisdictions dealing with the validity and scope of inventory searches. We recognize there is a definite split of authority. In the absence of a search incident to a valid arrest, and in the absence of probable cause for a search, we believe the better rule should limit a

good faith inventory search of a lawfully impounded automobile to items within plain sight.

We also find the trial court erred in refusing to suppress and exclude testimony relating to defendant's alleged confession of participation in the crime. Since the state concedes it used the incriminating items found in the trunk of the car to induce defendant to confess, the confession would be inadmissible as "fruit of the poisonous tree." *Wong Sun v. United States,* supra; *Pigford v. United States,* supra.)

The decision and judgment of the trial court denying defendant's motion for a new trial is hereby reversed and the case is remanded for a new trial.

FONTRON, J., concurring: I agree that the impoundment of the vehicle driven by defendant was unauthorized and hence that the inventory search was illegal. However, I have difficulty in accepting the concept that a search for inventory purposes is limited to those areas and to those objects which are in plain view. The general, and better rule in my judgment, would appear to be otherwise. (See Anno: Inventory Search of Impounded Vehicle, 48 A. L. R. 3d §§ 12 [*a*], pp. 577, 578, 13 [*a*], p. 580.)

KAUL, J., joins in the foregoing concurring opinion.

FROMME, J., not participating.