Jim **FLOYD**, Petitioner,

v.

The **UNITED STATES** of
America, Respondent.

No. 87–Y–75.

United States District Court,
D. Colorado.

Dec. 30, 1987.

---

Jeralyn E. Merritt, Denver, Colo., for petitioner.

Stephen C. Peters, Asst. U.S. Atty., Denver, Colo., for respondent.

## MEMORANDUM OPINION AND ORDER

SHERMAN G. FINESILVER, Chief Judge.

THIS CASE comes before the court on petitioner Jim Floyd's ("Floyd") motion for return of property pursuant to Rule 41(e) of the Federal Rules of Criminal Procedure, filed September 18, 1987. The court has reviewed the petition and respondent's answer. We have heard the testimony of the witnesses presented by the government at a hearing held November 23, 1987, and we have studied the parties' briefs and the relevant case law. The court finds that the government violated petitioner's fourth amendment rights, and we GRANT petitioner's motion for the reasons set forth below.

## I.

Petitioner brings this motion pursuant to Rule 41(e) seeking return of $41,440.00 in United States Currency. Petitioner claims officials of the Drug Enforcement Agency ("DEA") illegally seized the money in violation of his rights under the fourth amendment of the Constitution. The court makes the following findings of fact.

On September 12, 1987, petitioner proceeded through passenger screening area and metal detector at Stapleton International Airport on his way to the airport's "B" Concourse. He was carrying, among other bags, a blue duffel, which he placed on the screening table for X-ray. The security agent, Manuel Ramirez, could not view the contents of the bag through the blue material and requested that his coworker, Charles Talbert ("Talbert"), screen the bag. Talbert asked petitioner if he could unzip the bag, and petitioner consented. Upon opening the bag, the security officer found and removed two brass penguins and a smaller bag. Underneath the brass penguins were a pair of cowboy boots, and inside the cowboy boots, the officer found a large amount of U.S. currency wrapped in envelopes. Petitioner told the security officer, "I wish to hell you hadn't done that." Talbert saw more loose money at the bottom of the bag. He replaced the money and the other items in petitioner's luggage and permitted Floyd to continue through the checkpoint.

Talbert called his supervisor to report the occurrence and was instructed to follow petitioner down the concourse. The supervisor then summoned Denver Police Officer Stan Flint ("Flint"). In the meantime, Mr. Talbert had spotted petitioner in an airport bar at the end of the concourse. When

Officer Flint arrived, Talbert identified petitioner as the man sitting at the end of the bar. Petitioner noticed the officers and attempted to leave the bar with the bags. Officer Flint, wearing his police uniform, stopped petitioner and requested identification. Petitioner gave his name but could not produce identification. Officer Flint was then joined by Denver Police Officer Marty Hanley. The two officers requested that petitioner voluntarily go with them to the airport security office, but they did not tell him the reason for their request. Petitioner consented to the officers' demand, picked up his luggage, and the three men proceeded up the concourse.

On the way to the office, Flint stopped and placed a page to the Stapleton Special Narcotics Unit to prepare them for further investigation. Upon arriving at the airport security office, Officer Flint advised petitioner of his Miranda rights. Petitioner volunteered information about his identity. The police computer corroborated petitioner's name, date of birth, and Arizona residence, and the officers determined that no warrants for petitioner's arrest were outstanding. Petitioner refused to answer any further questions, however, and the police proceeded to check his bags for identification. Finding none, the officers then searched the duffel bag, as well as petitioner's hardside briefcase and a gray bag. Officer Flint testified that he did not ask petitioner for his consent to search the luggage. The officer did not find any contraband in the bags, but the police did decide to count the currency found in the duffel and placed the money on a table next to the bag. Petitioner still refused to answer questions and declined to sign an advisement form. He did not possess an airplane ticket and was silent when questioned about his reason for being at the airport.

Denver Police Technician Dennis Petersohn ("Petersohn"), his dog Belker, and Detective George Fortunato ("Fortunato")

of the Special Narcotics Unit then arrived at the office. Fortunato testified that he was unaware that petitioner had received a verbal explanation of his rights as required by the case of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1965). He told petitioner that he wanted to ask him some questions, but petitioner remained silent. Fortunato advised petitioner that he was not under arrest and was free to leave, but that the police would retain the blue duffel bag and its contents for further investigation. Petitioner stated that he had no claim to the duffel, and he then left the office with the other luggage.

Later, the DEA agents replaced the money in the blue duffel and took the bag to another office. Petersohn gave the command and had his dog sniff the open bag. Belker removed some money from the duffel with his mouth, indicating that he had detected the smell of narcotics on the currency. No criminal investigation is pending against petitioner, and the government has not filed any charges against him.

## II.

### A. *Rule 41(e) and Jurisdiction*

■ Rule 41(e) provides a method for enforcing fourth amendment rights against unreasonable searches and seizures by permitting an aggrieved person to move the district court for return of the property seized.[1] In applying Rule 41(e), the courts must determine whether (1) the person is entitled to lawful possession, and (2) the seizure was illegal. Fed.R.Crim.P. 41 (Commentary to 1972 Amendment). Where, as here, the goods seized are not contraband, the court may proceed directly to the issue of whether the search and/or seizure was illegal. *Roberts v. United States*, 656 F.Supp. 929 (S.D.N.Y.1987). If petitioner satisfies both criteria, the remedial procedures of Rule 41(e) are triggered,

---

1. Rule 41(e) states, in pertinent part:

 A person aggrieved by an unlawful search and seizure may move the district court for the district in which the property was seized for the return of the property on the ground that such person is entitled to lawful possession of the property which was illegally seized ... If the motion is granted the property shall be restored....

and the government must return the property to the petitioner.[2]

■ Petitioner filed this motion on September 18, 1987. The government claims that it instituted administrative forfeiture proceedings for the currency on September 21, 1987.[3] On October 26, 1987, the court denied the government's motion to dismiss this petition. We held that the government's subsequent filing of administrative forfeiture proceedings against the property did not divest this court of subject matter jurisdiction to hear Floyd's petition. *Camacho v. United States*, 645 F.Supp. 725 (E.D.N.Y.1986). *See also United States v. Martinson*, 809 F.2d 1364, 1369 (9th Cir.1987) (district court has jurisdiction to entertain a pre-indictment motion for return of property); *Roberts v. United States*, 656 F.Supp. 929 (S.D.N.Y.1987) (Rule 41(e) provides for pre-indictment adjudication of the legality of a seizure); *United States v. United States Currency*, 495 F.Supp. 147, 151 (E.D.N.Y.1980); *In re Worksite Inspection of Quality Products*, 592 F.2d 611 (1st Cir.1979). Nonetheless, the government argues that petitioner has not exhausted his administrative remedies and that the court does not have jurisdiction to hear Floyd's motion under Rule 41(e). Respondent relies upon Rule 54(b)(5) of the Federal Rules of Criminal Procedure, which states in pertinent part: "These rules are not available to ... civil forfeiture of property for violation of a statute of the United States." The government contends that this rule prohibits petitioner from moving the court pursuant to Rule 41(e). We disagree.

■ We have considered and reject the government's attack on our jurisdiction to hear this timely motion. The government did not institute administrative forfeiture proceedings until after petitioner had filed his motion. At the time that Floyd filed this Rule 41(e) motion, he had no administrative remedies to exhaust. Moreover, at the time petitioner filed this motion, Rule 54(b)(5) had no application to his case because no civil forfeiture proceedings had been instituted against the property.[4] We do not read Rule 54(b)(5) to exclude pre-existing motions for return of property simply because the government may, at some future time, begin a civil forfeiture action against the property. The court will not preclude petitioner's remedy under Rule 41(e) based upon the government's later initiation of administrative forfeiture proceedings against the currency.[5] The mo-

---

2. Relying upon *G.M. Leasing Corp. v. United States*, 429 U.S. 338, 359–60, 97 S.Ct. 619, 632, 50 L.Ed.2d 530 (1977), the government asserts that petitioner must also demonstrate irreparable harm in order to prevail on this motion. We disagree. The plain language of the rule makes no reference to irreparable harm. Moreover, several courts have rejected the argument that a petitioner must demonstrate irreparable harm in order to prevail on a Rule 41(e) motion. *Roberts v. United States*, 656 F.Supp. at 932 (nothing in the language of Rule 41 indicates that irreparable harm must be shown); *In re Application of First United Financial Corp.*, 620 F.Supp. 1450, 1452 (C.D.N.Y.1985) (any deliberate violation of the fourth amendment is constitutionally irreparable); *United States v. Wright*, 610 F.2d 930 (D.C.Cir.1979) (seizure of property is prima facie evidence of an entitlement to the property). Finally, the Supreme Court has not addressed the issue of whether Rule 41(e) requires that the movant prove irreparable harm. In *G.M. Leasing*, the Supreme Court spoke of an irreparable harm showing in dicta. *G.M. Leasing Corp. v. United States*, 429 U.S. at 359–60, 97 S.Ct. at 632.

3. The court has not made a specific finding that administrative forfeiture proceedings were, in fact, instituted on this day.

4. In contrast, the government has referred the court to *In re Seizure Warrant*, 830 F.2d 372 (D.C.Cir.1987), where the court of appeals held that Rule 54(b)(5) prohibits the filing of a Rule 41(e) motion after the government has obtained a seizure warrant pursuant to 21 U.S.C. § 881(b).

5. In addition to our jurisdiction to hear this motion pursuant to Rule 41(e), the court has jurisdiction to hear a suit for return of property. The district court has jurisdiction to hear a suit for return of property based upon both Rule 41(e) and the general equitable jurisdiction of the federal courts. *In re Grand Jury Proceedings*, 724 F.2d 1157, 1160 (5th Cir.1984); *Klitzman & Gallagher v. Krut*, 591 F.Supp. 258 (D.N.J.1984); *Pieper v. United States*, 460 F.Supp. 94, 96 n. 1, aff'd, 604 F.2d 1131 (8th Cir.1979) (Rule 41(e) is merely a codification of the equitable or anomalous jurisdiction doctrine); *Hiller v. Murphy*, 600 F.Supp. 14, 16 (N.D.Ga.1984); *Richey v. Smith*, 515 F.2d 1239 (5th Cir.1975).

**1088**

tion for return of property is properly before us in the present procedural posture.

### B. *Fourth Amendment Claims*

Petitioner claims that the respondent violated petitioner's fourth amendment right to be free from illegal searches and seizures. Specifically, petitioner alleges that: (1) his fourth amendment rights were violated by the actions of officers stopping him in the airport concourse after he was permitted to proceed to his gate; (2) he was seized without probable cause in violation of the fourth amendment when the officers requested that he follow them to the airport security office; and (3) the officers violated his fourth amendment rights by searching his luggage in the airport security office. Petitioner further asserts that no exceptions to the fourth amendment warrant requirement apply in this case, and the evidence obtained after the illegal seizures, the money, must be returned to him under Rule 41(e) of the Federal Rules of Criminal Procedure.

The government responds that the stop of petitioner in the concourse was based upon a reasonable articulable suspicion that petitioner was involved in criminal activity based upon his possession of a large amount of currency and his suspicious behavior. The government further argues that petitioner voluntarily accompanied the agents to the security office and that the voluntary action exception to the probable cause requirement of the fourth amendment applies in this case. Finally, the government argues that petitioner does not have standing to challenge the subsequent search of his bags because he disclaimed ownership of the duffel and its contents shortly thereafter.

■ The court notes initially that airport security officers legally searched petitioner's bag at the X-ray screening checkpoint. The government has a substantial interest in preventing air piracy and drug trafficking, and passengers who present themselves at a security checkpoint automatically consent to such a screening of their luggage and their persons. *See United States v. McKennon*, 814 F.2d 1539,

1545 (11th Cir.1987); *United States v. Hernandez–Cano*, 808 F.2d 779, 781 n. 1 (11th Cir.1987). Once the individual consents to the security screening, a subsequent search of his luggage requires only that the security agents have a mere suspicion of possible illegal activity. *United States v. Lopez–Pages*, 767 F.2d 776, 778 (11th Cir. 1985). In this case, petitioner voluntarily presented himself at the airport security checkpoint. The presence of undefined objects in the duffel raised a justifiable suspicion in the security guard. Therefore, the subsequent search of petitioner's bag with his consent was legal.

### 1. *Stop of petitioner in the concourse*

■ Petitioner initially challenges the legality of the stop of petitioner on the concourse by airport officers. *Terry v. Ohio* establishes that a reasonable investigative stop conducted by police officers does not violate the fourth amendment. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). However, the fourth amendment mandates that police officers be able to articulate specific, reasonable facts to support an investigative stop of a suspicious individual. *Terry v. Ohio*, 392 U.S. at 21, 88 S.Ct. at 1879. The court must evaluate the reasonableness of a stop on the facts and circumstances of each case, including (1) the public interest served by the seizure; (2) the nature and scope of the intrusion; and (3) the objective facts upon which the law enforcement officer relied in light of this knowledge and expertise. *Brown v. Texas*, 443 U.S. 47, 50–51, 99 S.Ct. 2637, 2640–41, 61 L.Ed.2d 357 (1979); *United States v. Brignoni–Ponce*, 422 U.S. 873, 879–83, 95 S.Ct. 2574, 2579–81, 45 L.Ed.2d 607 (1975); *Terry v. Ohio*, 392 U.S. at 20–22, 88 S.Ct. at 1879–81. Law enforcement agents do not violate the fourth amendment merely by approaching a suspicious individual in a public place to ask some questions. *Florida v. Royer*, 460 U.S. 491, 497, 103 S.Ct. 1319, 1323, 75 L.Ed.2d 229 (1982).

■ Petitioner contends that the officers had no reasonable basis to suspect that he was engaging in criminal activity.

The government asserts, however, that the presence of a large amount of money in petitioner's bag, coupled with his strange behavior, supports the officers' claim that they had a reasonable, articulable suspicion that Floyd was engaged in illegal activity. We agree.

The court has reviewed the factors that led the officers to stop and question petitioner, and our review has considered these circumstances in light of the fact that a trained law enforcement agent may be "able to perceive and articulate a meaning in given conduce which would be wholly innocent to the untrained observer." *Brown v. Texas*, 443 U.S. at 52, n. 2, 99 S.Ct. at 2641, n. 2. The court heard Officer Flint's testimony at the hearing, and we conclude that his decision to stop petitioner for brief questioning was reasonable. Officer Flint had twenty-seven years of experience in law enforcement, and he had worked as a field training officer at Stapleton Airport for two years. He testified that he stopped Floyd in reliance upon the fact that petitioner was carrying a large amount of money in an international airport. Flint further stated that petitioner acted nervous and attempted to avoid contact with him. In summary, Officer Flint, a trained policeman, observed petitioner at an international airport engaging in conduct that he reasonably associated with criminal activity. The court finds that the police had a reasonable, articulable suspicion for stopping petitioner in the concourse.

■■■ The court also finds that the police conducted the investigative stop in the concourse in a reasonable manner. Officer Flint approached petitioner in a public area. The officers did not display weapons, nor did they threaten petitioner in any way. The police asked petitioner only a few brief questions. Nothing in the record indicates that petitioner had an objective reason to believe that he was not free to end his conversation with the officers in concourse. The length and scope of the detention was carefully tailored to its underlying justification. Balancing the public interest in preventing drug trafficking against the mini-

mal intrusion of this stop on petitioner's privacy, the court finds that the stop was reasonable.

**2.** *Request that petitioner go to the security office*

■■■ Although the court has found that the agents justifiably stopped petitioner in the concourse and that this stop was reasonable in time and scope, our inquiry does not end here. We must go on to determine whether respondents illegally seized petitioner by requesting that he accompany them to the security office. Relying upon the Supreme Court's decision in *United States v. Mendenhall*, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980), the government claims that this action represented a continuation of the investigative stop and that the officers did not coercively detain Floyd. Petitioner maintains, however, that the request that he follow the officers to the security office amounted to more than a mere investigative stop—that it was a custodial detention. *See Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); *United States v. Hill*, 626 F.2d 429 (5th Cir.1980). Petitioner asserts that if it was a detention, a fourth amendment seizure, it must be supported by probable cause. *Florida v. Royer*, 460 U.S. at 496, 103 S.Ct. at 1323; *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979).

Petitioner correctly contends, and Officer Flint admitted, that the police did not have probable cause to believe petitioner had engaged in, was engaging in, or was about to engage in illegal activity at the time they moved to the police office. However, the court need not reach the question of whether, in the absence of probable cause, the request that defendant accompany the officers to their office would have amounted to an arrest. The law provides that police need not have probable cause to engage in a custodial detention so long as the individual volunteers to accompany the officers. *United States v. Mendenhall*, 446 U.S. at 557–58, 100 S.Ct. at 1878–79. Whether consent is voluntary and not the product of duress or coercion is a question of fact to be determined from the totality of the cir-

cumstances. *Mendenhall,* 446 U.S. at 557, 100 S.Ct. at 1878; *Schneckloth v. Busta- monte,* 412 U.S. 218, 227, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973). The Tenth Circuit has established a three-tiered analysis to determine whether consent is voluntary. *United States v. Recalde,* 761 F.2d 1448, 1453 (10th Cir.1985). First, the government must present clear and positive testimony that consent was unequivocal and specific. Second, the government must establish consent was given without duress or coercion. Third, the court must evaluate the first two standards in light of the traditional presumption against the waiver of constitutional rights. The burden of proving consent falls on the government. *Mendenhall,* 446 U.S. at 557, 100 S.Ct. at 1878; *Schneckloth,* 412 U.S. at 222, 93 S.Ct. at 2045.

We have carefully scrutinized petitioner's unequivocal agreement to accompany the officers to the security office, and we are persuaded of the absence coercive influences. *United States v. Berry,* 670 F.2d 583, 598 (5th Cir.1982). Petitioner did not testify at the hearing, and he has presented no evidence suggesting duress or improper police conduct. The officers did not possess petitioner's driver's license, airline ticket, or baggage. The facts of this case do not demonstrate that petitioner was a passenger interrupted during a stopover, or that petitioner was pressed for time in which to make a flight, situations which may encourage involuntary consent. Indeed, petitioner had no airplane ticket and no planned destination. Nothing in the record casts doubt on the voluntariness of petitioner's consent. Petitioner's consent validates the detention, and the officers therefore did not violate petitioner's fourth amendment rights.

3. *Search of luggage in airport security office*

■■■ Because the search of petitioner's luggage was not preceded by an imper-

missible seizure of his person, petitioner cannot contend that the subsequent search was infected by an unlawful detention. However, the court now must consider whether the officers subsequently violated petitioner's fourth amendment rights by searching his bags in the airport security office. The fourth amendment provides that "the right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated...." Law enforcement agents needed a search warrant or probable cause[6] to search Floyd's luggage. Although the officers were justified in seizing the luggage to prevent the loss or destruction of its contents, the government was required to obtain a warrant to search the bags. *United States v. Place,* 462 U.S. 696, 703–07, 103 S.Ct. 2637, 2642–44, 77 L.Ed.2d 110 (1983). The government concedes, however, that it had neither a warrant nor probable cause to believe that petitioner was committing or had committed an illegal act at the time of the search.

■■■ Where, as here, police conducted a search without a search warrant or probable cause, the burden is on the government to bring the case within one of the exceptions to the warrant requirement. *Mincey v. Arizona,* 437 U.S. 385, 390–91, 98 S.Ct. 2408, 2412–13, 57 L.Ed.2d 290 (1978). Subsequent events, such as the finding of evidence or contraband, cannot validate a search that was unlawful at its inception. A search without a warrant is allowed if it was incident to petitioner's arrest, if exigent circumstances required that a search be conducted, or if there was a voluntary consent to the search. In this case, petitioner was not under arrest at the time of the search, and the search incident to arrest exception of *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1968), does not apply. Moreover, the government does not allege that exigent

---

**6.** The court notes that the police need not formally place a suspect under arrest in order to search his person and possessions, so long as the officers have probable cause to believe that the suspect has committed or is about to commit a crime and that evidence of the crime may

be found. See *Cupp v. Murphy,* 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1972) (upholding warrantless search of suspect's fingernails for evanescent evidence based upon officers' probable cause to believe suspect had committed a murder).

circumstances existed requiring an immediate search, and there was no reasonable grounds to believe that there was an immediate need to protect lives or property. *United States v. Smith*, 797 F.2d 836 (10th Cir.1986). Finally, the government's witnesses admitted that they did not ask petitioner for his consent to search the bags. Thus, the voluntary consent exception to the warrant requirement also does not apply here. In summary, none of the exceptions to the warrant requirement is available to validate the search of petitioner's luggage.

 The government argues, however, that plaintiff does not have standing to challenge the legality of the search because he abandoned the property by disclaiming ownership of the bag and its contents shortly after the search. We disagree. The doctrine of abandonment provides that the warrantless search or seizure of abandoned property is not unreasonable and does not violate the fourth amendment. *Abel v. United States*, 362 U.S. 217, 241, 80 S.Ct. 683, 698, 4 L.Ed.2d 668 (1960). The test for abandonment is whether an individual has retained any reasonable expectation of privacy in the object at the time of the search or seizure. *United States v. Jones*, 707 F.2d 1169, 1172 (10th Cir.1983), *cert. denied*, 464 U.S. 859, 104 S.Ct. 184, 78 L.Ed.2d 163 (1983). If a person has voluntarily abandoned property,

he has no standing to complain of the search or seizure of that property. *United States v. Nordling*, 804 F.2d 1466 (9th Cir. 1986). However, a loss of standing to challenge a search cannot be brought about by illegal police conduct. *United States v. Gilman*, 684 F.2d 616, 620 (9th Cir.1982); *United States v. Maryland*, 479 F.2d 566, 568 (5th Cir.1973).

The court finds that the abandonment exception to the fourth amendment does not apply in this case because the government illegally searched the luggage before petitioner disclaimed ownership in the property. Disclaimer of ownership followed the improper law enforcement conduct.[7] Floyd had not voluntarily discarded, left behind, disclaimed, or otherwise relinquished his interest in the property such that he no longer retained a reasonable expectation of privacy in the luggage at the time of the search. Because petitioner had not abandoned the property at the time of the search, he has standing to challenge the government's illegal search.[8]

### III.

### ORDER

Accordingly, petitioner's motion for return of property pursuant to Rule 41(e) of the Federal Rules of Criminal Procedure is

---

**7.** The court need not reach the question of whether petitioner's disclaimer of ownership constituted abandonment under these circumstances. However, we note that abandonment of property is a question of intent and depends upon whether, through words, acts, or other objective indications, the person has relinquished his reasonable expectation of privacy in the property. *United States v. Jones*, 707 F.2d at 1172.

**8.** Every case cited by respondent in support of its argument involves circumstances where the police or other government officials searched property after the individual had abandoned it. *See United States v. Jones*, 707 F.2d at 1170 (police found brown satchel outside building where defendant had abandoned it and searched the bag); *United States v. Collis*, 766 F.2d 219, 221 (6th Cir.1985), *cert. denied*, 474 U.S. 851, 106 S.Ct. 150, 88 L.Ed.2d 124 (1985) (defendant abandoned bag while being pursued by airport authorities. The agents later re-

trieved the bag, searched it, and found cocaine); *United States v. Tolbert*, 692 F.2d 1041, 1043–44 (6th Cir.1982), *cert. denied*, 464 U.S. 933, 104 S.Ct. 337, 78 L.Ed.2d 306 (1983) (defendant, under surveillance at airport, failed to claim her luggage from airline. She affirmatively denied having luggage. Subsequently, agents retrieved a bag unclaimed from her flight and searched the suitcase); *United States v. Canady*, 615 F.2d 694, 695–96 (5th Cir.1980) (defendant disclaimed ownership of suitcase and its contents prior to police searching the bag); *United States v. DiGregorio*, 605 F.2d 1184 (1st Cir.1979), *cert. denied*, 444 U.S. 937, 100 S.Ct. 287, 62 L.Ed.2d 197 (1979) (FBI agent noticed wallet on chair which was pushed under a table. Following defendant's disclaimer of knowledge of or interest in the wallet, the agent searched the property); *United States v. Anderson*, 500 F.2d 1311, 1314, 1318 (5th Cir.1974) (defendant disclaimed ownership of luggage before law enforcement official searched it).

GRANTED. Each party shall bear their own costs and attorney's fees.