No. 126,167

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS ex rel. KANSAS HIGHWAY PATROL,
*Appellee*,

v.

$381,620 in U.S. CURRENCY and BRYCE ROBERT FULEKI,
*Appellant*.

SYLLABUS BY THE COURT

In a forfeiture proceeding under the Kansas Standard Asset Seizure and Forfeiture Act, K.S.A. 60-4101 et seq., a court presented with a claimant's motion to suppress evidence alleging unconstitutional police conduct that preceded the seizure of the forfeited property must decide the suppression issue before deciding any motion regarding the claimant's standing.

Appeal from Saline District Court; PAUL J. HICKMAN, judge. Oral argument held February 4, 2025. Opinion filed May 2, 2025. Reversed and remanded with directions.

*Julie McKenna*, of McKenna Law Office, P.A., of Salina, and *Sef Krell*, pro hac vice, of Law Offices of Sef Krell, of Encino, California, for appellant.

*Stacy R. Bond*, of Kansas Highway Patrol, *Anthony Powell*, solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before COBLE, P.J., SCHROEDER and ISHERWOOD, JJ.

COBLE, J.:  After a traffic stop on Interstate 70 culminated in a search of Bryce Robert Fuleki's rental vehicle, revealing a suitcase of cash, Fuleki was directed to drive to Kansas Highway Patrol (KHP) headquarters. He eventually signed a disclaimer of

ownership to the $381,620 in cash found in the suitcase. In the civil forfeiture proceeding later filed by the State of Kansas on behalf of the KHP, Fuleki filed a claim to the defendant $381,620 in United States currency, as well as a motion to suppress all evidence on the basis that his traffic stop and detention were unlawful. But the district court declared Fuleki lacked standing to challenge the civil forfeiture proceedings because he voluntarily disclaimed any ownership of the currency, both verbally and in writing, so he was not an owner or interest holder under the Kansas Standard Asset Seizure and Forfeiture Act (Forfeiture Act), K.S.A. 60-4101 et seq., specifically K.S.A. 2019 Supp. 60-4111(a) and K.S.A. 60-4102(e) and (j). He now appeals that judgment.

But because no other person possesses the right to challenge any constitutional infirmities which may, or may not, exist in Fuleki's traffic stop and detention, he must be permitted to do so. We find the district court must first have examined his motion to suppress evidence before considering the State's motion to dismiss his claim on standing grounds and erred by failing to do so. On that basis, we reverse the district court's decision striking Fuleki's claim, reverse its judgment of forfeiture, and remand the case for a suppression hearing.

FACTUAL AND PROCEDURAL BACKGROUND

We recount the following story of Fuleki's traffic stop based on evidence presented to the district court in earlier proceedings. We do so not to establish factual findings for the district court's later use on remand, but only to provide context to our analysis in this opinion.

KHP Trooper Kyle J. Seiler was parked in the median of Interstate 70 near Salina at 11:45 p.m. on May 19, 2020. The trooper observed a vehicle travel across the fog line several times. Concerned about driver impairment, Trooper Seiler stopped the vehicle and contacted the driver, Fuleki.

2

While Fuleki searched for his rental agreement for the vehicle, Trooper Seiler asked Fuleki questions. The trooper believed that some of the answers were inconsistent with other statements Fuleki had made and with his circumstances. Trooper Seiler also detected signs of nervousness. When Fuleki could not find a copy of his rental agreement, Trooper Seiler informed Fuleki that he was not going to issue a ticket but would issue a written warning. Trooper Seiler asked Fuleki to stand outside the patrol vehicle as the trooper sat inside his patrol vehicle to run his license information and issue the warning. As he worked, Trooper Seiler continued to question Fuleki about his home and his destination. Trooper Seiler believed Fuleki provided evasive answers. Based on his training and experience, Trooper Seiler began to suspect that Fuleki was transporting contraband.

Trooper Seiler told Fuleki that everything looked good with his license and deactivated his front-facing emergency lights. He printed the warning, handed it to Fuleki, and asked Fuleki if he had any questions. The trooper reminded Fuleki that the warning did not require a court appearance or a fine and admonished Fuleki to be safe. Fuleki responded in kind and began walking back to his rental vehicle. Once Fuleki reached the rear bumper of his vehicle, Trooper Seiler got out of his patrol vehicle and asked to speak further with Fuleki. Fuleki said that he would speak with the trooper and began to walk back towards the patrol vehicle. Trooper Seiler questioned Fuleki about the contents of his vehicle and then asked for consent to search. Fuleki denied consent. Trooper Seiler then directed Fuleki to stand at the side of the road and informed him he was being detained until a drug canine could sniff the vehicle.

Salina Police Department Officer Austin Baker responded to Trooper Seiler's request for a canine unit. According to Trooper Seiler's timeline, Officer Baker arrived 23 minutes after Trooper Seiler directed Fuleki to stand at the side of the road. Officer Baker's canine alerted to something in the vehicle. Trooper Seiler began to search the vehicle and initially found nothing of note except Fuleki's backpack, a rolled-up sleeping

3

bag, and a scrap of paper in the center console cup holder with a California address written on it. Inside the backpack, Trooper Seiler found a bundle of cash in twenty dollar denominations. Trooper Seiler moved the rear seat back and discovered a hard-shell, carry-on-sized suitcase. The suitcase was heavy and locked. Trooper Seiler looked for keys and requested them from Fuleki. Fuleki stated he did not have any keys for the suitcase, even after Trooper Seiler told him he would break the locks. Trooper Seiler asked if the suitcase belonged to Fuleki, and Fuleki said it belonged to a friend. When Trooper Seiler asked how Fuleki came to have possession of the suitcase, Fuleki refused to answer further questions.

Trooper Seiler pried open the suitcase locks. After opening the suitcase, the trooper observed that the contents were contained under the liner. He felt the contents through the liner and believed it to be vacuum-sealed packages. Trooper Seiler cut the liner on both sides of the suitcase and discovered a total of 11 vacuum-sealed packages of cash and a notebook. The notebook contained names of marijuana strains and prices.

Trooper Seiler told Fuleki that he was confiscating the cash and taking it to the KHP headquarters in Salina. Trooper Seiler directed Fuleki to follow him to headquarters and speak with an officer with the Drug Enforcement Administration task force, Officer Shawn Herrman. Fuleki followed Trooper Seiler to the KHP offices as ordered, with Officer Baker following him.

On arrival to the KHP headquarters, Fuleki met with Officer Herrman. Because of COVID, Trooper Seiler and Officer Herrman interviewed Fuleki in the KHP garage with the doors open. During the interview, Fuleki repeatedly denied ownership of the suitcase full of cash. The officers eventually provided Fuleki with a property disclaimer form, which he partly filled out and then signed. That form was completed at 4:11 a.m. on May 20, 2020—more than 4 hours after the initial traffic stop occurred. Trooper Seiler

4

provided Fuleki with notice of the civil forfeiture of the suitcase and cash and released him.

Two months later, the State of Kansas, on behalf of the KHP, filed a notice of pending forfeiture in the district court. The district court issued an order for publication, and the notice was published in the local newspaper. Still, the county attorney's office also personally served Fuleki by certified mail, and Fuleki acknowledged receipt of the notice with his signature on August 4, 2020.

On September 21, 2020, Fuleki filed a claim in the forfeiture proceeding. Although he claimed an interest in the seized currency, he provided no details, exercising his Fifth Amendment privilege under the United States and Kansas Constitutions against self-incrimination under K.S.A. 2019 Supp. 60-4111. Just over a month later, the State moved to strike Fuleki's claim and sought a default judgment. The State argued that because Fuleki disclaimed ownership in the currency, he lacked standing to state a claim; his claim failed to substantially comply with K.S.A. 2019 Supp. 60-4111 by describing his interest in the property; and his claim failed to show how the currency was exempt from forfeiture. Lacking a valid claim to the currency, the State asked the court to enter a default judgment.

Fuleki then filed an amended claim in the forfeiture action, again exercising his Fifth Amendment rights, but adding assertions that the seized cash was exempt from forfeiture and that the cash did not constitute proceeds from any violation of the Kansas Uniform Controlled Substances Act, K.S.A. 65-4101 et seq.

"4. The Claimant, Bryce Robert Fuleki, is making a claim and moving for denial of forfeiture regarding the above captioned property of $381,620 in United States Currency seized by the law enforcement Kansas Highway Patrol.

5

"5. The Claimant, Bryce Robert Fuleki, regarding the nature and extent of his interest in the property, reserves and asserts his Fifth Amendment privilege against self-incrimination provided in the United States and Kansas Constitutions, and with respect to all statutory requirements as may be set forth hereafter, within this response pursuant to K.S.A. 60-4110 and K.S.A. 60-4111.

"6. The Claimant, Bryce Robert Fuleki, regarding the date and time, the identity of the transferor, and a description of the circumstances of the Claimant's acquisition of interest in the property, reserves and asserts his Fifth Amendment privilege against self-incrimination provided in the United States and Kansas Constitutions, and with respect to all statutory requirements as may be set forth hereafter, within this response pursuant to K.S.A. 60-4110 and K.S.A. 60-4111.

"7. The Claimant, Bryce Robert Fuleki, asserts exemption from forfeiture as expressed in K.S.A. 60-4106, or any other provisions of K.S.A. 60-4101 et seq., and further alleges, said property is not subject to forfeiture pursuant to either K.S.A. 60-4104, 60-4105, or any other applicable provisions of K.S.A. 60-4101 et seq.

"8. The Claimant, Bryce Robert Fuleki, denies that any of the property constituted proceeds derived from the sale, delivery, transportation, storage, and concealment of an illegal controlled substance under K.S.A. 60-5706, or a violation of any other provision of the Uniform Controlled Substances Act, K.S.A. 21-5701 et seq., giving rise to forfeiture under Kansas Standard Asset Seizure and Forfeiture Act, K.S.A. 60-4104(b), and K.S.A. 60-5105(b)(2). Claimant denies the presumption of forfeitability exists pursuant to K.S.A. 60-4112(j) and (k)."

He also filed a response opposing the State's motion to strike and request for default judgment.

The State filed a petition for forfeiture, to which Fuleki filed an answer. Both parties sought discovery. The district court declined to grant the State's motion to compel discovery from Fuleki because it might undermine his Fifth Amendment privileges.

6

Fuleki then filed a motion to suppress all evidence as the result of an unreasonable search and seizure, out of time. He argued his first detention—the traffic stop itself—was unreasonably prolonged, and the second detention—which began after the trooper handed Fuleki the warning ticket—was not supported by reasonable suspicion. The district court refused to strike the motion to suppress as untimely because of increased difficulties with filings due to the district court's transition to the Odyssey e-filing platform and Fuleki's efforts to fax file the document. In the district court's order it stated that "[t]he validity of the voluntary disclaimer needs to be addressed before the Court can hear the Motion to Suppress." The court scheduled a hearing to address the effect of Fuleki's written disclaimer on his standing to make a claim, and, if necessary, to consider the motion to suppress.

Fuleki appeared only through counsel at the hearing and offered no evidence. His counsel argued that

> "for the court to fail to provide Fuleki an opportunity to bring his Motion to Suppress before the court is to deprive him of his constitutional rights under the Fourth Amendment . . . [and he] should be entitled to address the conditions and the facts that occurred prior to him being brought to the station. Prior to him being interviewed, interrogated, whatever the right term is. And then and only then after all that being asked to sign this form which was not explained to him in a way—there was no persuasive testimony that he understood what that form was."

After focusing on the interview that took place at KHP headquarters and the circumstances surrounding the signing of the voluntary disclaimer form and hearing testimony from Trooper Seiler and Officer Herrman regarding the nature of their interview with Fuleki, the district court concluded that Fuleki's disclaimer of the property was voluntary and knowing. The court then determined that Fuleki was not an owner or property interest holder in the cash within the meaning of K.S.A. 2019 Supp. 60-4111(a), so he had no right to participate in the forfeiture proceedings and struck his claim.

7

Because Fuleki had no right to participate in the forfeiture proceedings, the court found he likewise had no right to contest the validity of the traffic stop through a motion to suppress evidence.

The district court filed its journal entry, memorializing its ruling from the bench on November 14, 2022. After the State again published notice of the forfeiture, it sought default judgment, which the district court granted.

Fuleki timely appealed the district court's judgment.

### DID THE DISTRICT COURT ERR BY ADDRESSING THE EFFECT OF THE DISCLAIMER ON STANDING BEFORE HEARING THE MOTION TO SUPPRESS?

Before us we have two competing interests at play which, in this court's review, have not been considered together before but have now been placed at practical odds by the motions filed by the parties. One is the issue of exclusion of evidence, prompted by Fuleki's motion to suppress. The other is the concept of standing—in forfeiture cases and search and seizure matters, generally—brought about by the State's motion to strike Fuleki's claim. First, we acknowledge that we must view each concept within the lens of the type of proceeding we address, of course, and that is civil forfeiture.

The forfeiture of property related to criminal enterprise is governed by the Forfeiture Act, which establishes an in rem civil proceeding for the forfeiture of property. See *State v. Yeoman*, 24 Kan. App. 2d 639, 641, 951 P.2d 964 (1997) ("In contrast to the in personam nature of criminal actions, actions in rem have traditionally been viewed as civil proceedings. The Kansas statutes at issue here provide for in rem forfeiture.").

A forfeiture may occur under the Forfeiture Act regardless of whether there is a criminal prosecution related to the conduct or offense giving rise to the forfeiture. K.S.A.

8

2019 Supp. 60-4104. Multiple types of conduct and offenses specified by Kansas law give rise to forfeiture, including violations involving controlled substances as defined in various sections of the Kansas controlled substances statutes. K.S.A. 2019 Supp. 60-4104(b) (citing K.S.A. 2019 Supp. 21-5701 through 21-5717).

Kansas statutes quite broadly make all property of every kind, including currency, subject to forfeiture, so long as the property is derived from, the proceeds of, or used in any manner to facilitate illegal conduct which would give rise to forfeiture, subject to some exceptions. K.S.A. 2019 Supp. 60-4105, K.S.A. 2019 Supp. 60-4106 (setting out exemptions).

Here, the State claimed the $381,620 in United States currency was used or intended to be used

> "to facilitate the purchase, sale, delivery, transportation, storage, and concealment of marijuana, tetrahydrocannabinol, and/or drug paraphernalia, or constitutes financial or other proceeds derived from the sale, delivery, transportation, storage, and concealment of marijuana, tetrahydrocannabinol, and/or drug paraphernalia, all in violation of K.S.A. 2019 Supp. 21-5705, and/or K.S.A. 2019 Supp. 21-5706, and/or K.S.A. 2019 Supp. 21-5709, and/or K.S.A. 2019 Supp. 21-5716."

The State's Notice of Pending Forfeiture claimed the money was found "in close proximity to marijuana, THC, and/or paraphernalia," which, if proven, would be acts giving rise to forfeiture under the Forfeiture Act, K.S.A. 2019 Supp. 60-4104(b), and K.S.A. 2019 Supp. 60-4105(b)(1), (2), (c), and (d).

If a claimant files a sufficient claim and answer, the forfeiture issue is decided by the district court. Under the statute in effect at the time, K.S.A. 2019 Supp. 60-4113(h), the State bore the initial burden to prove to the court that its interest in the currency is subject to forfeiture by the preponderance of the evidence. (This standard was changed,

9

effective July 1, 2024, to "clear and convincing evidence." L. 2024, ch. 79, § 7.). In this case, assuming the conundrums we address today did not exist, the State may have an uphill battle, given that the record reveals the officers located no illegal drugs during Fuleki's traffic stop despite the canine's alert. But that is not our concern today, as we continue to consider how forfeiture proceedings like this one can invoke a person's constitutional rights.

*Constitutional Exclusionary Rule in Forfeiture Proceedings*

In 1965, the United States Supreme Court announced that "the constitutional exclusionary rule does apply to . . . forfeiture proceedings . . . ." *One 1958 Plymouth Sedan v. Pennsylvania*, 380 U.S. 693, 696, 85 S. Ct. 1246, 14 L. Ed. 2d 170 (1965). Since then, many appellate courts, including ours, have repeated this principle. See *State ex rel. Kansas Highway Patrol v. $28,350 in U.S. Currency*, 65 Kan. App. 2d 203, 211, 562 P.3d 1034 (2025); *State ex rel. Geary Cnty. Sheriff's Dep't v. One 2008 Toyota Tundra*, 55 Kan. App. 2d 356, 362, 415 P.3d 449 (2018); see also *United States v. $39,440.00 in U.S. Currency*, 39 F. Supp. 3d 1169, 1172 (D. Kan. 2014) ("Although forfeiture proceedings are civil in nature, they are not to be effectuated in derogation of one's constitutional rights. The government will be precluded from introducing any evidence seized in violation of the Fourth Amendment to prove its claim of forfeiture.") (citing *United States v. $3,799.00 in United States Currency*, 684 F.2d 674, 677 [10th Cir. 1982]).

The United States Supreme Court explained that although a forfeiture is technically a civil case, it is "quasi-criminal in character. Its object, like a criminal proceeding, is to penalize for the commission of an offense against the law." *One 1958 Plymouth Sedan*, 380 U.S. at 700. In *One 1958 Plymouth Sedan*, the driver and owner of a Plymouth sedan was arrested and charged with a violation of state liquor laws after law enforcement stopped the car without a warrant and officers searched the vehicle, finding

10

31 cases of liquor that bore no state tax seals. Officers seized the car and liquor and arrested the driver. If convicted, the driver would be subject to a maximum $500 fine, and in the forfeiture proceeding, he was subject to loss of his automobile, which had an estimated value of $1,000—an even greater ultimate punishment. The United States Supreme Court found it would be anomalous, then, if it were to find the search illegal, to determine that in the adjacent criminal proceeding the illegally seized evidence would be excludable, while in the forfeiture proceeding, the same evidence would be admissible. 380 U.S. at 700-01.

In Kansas, both the Fourth Amendment to the United States Constitution and section 15 of the Kansas Constitution Bill of Rights protect individuals from unreasonable searches and seizures. U.S. Const. amend. IV; Kan. Const. Bill of Rights, § 15; *$28,350 in U.S. Currency*, 65 Kan. App. 2d at 211. A traffic stop like this one, where Trooper Seiler pulled over Fuleki's vehicle and restrained his liberty, constituted a seizure. 65 Kan. App. 2d at 211 (citing *State v. Jones*, 300 Kan. 630, 637, 333 P.3d 886 [2014]). For Seiler's seizure of Fuleki to have been constitutionally reasonable, the trooper must have had "'specific and articulable facts that create a reasonable suspicion the seized individual is committing, has committed, or is about to commit a crime or traffic infraction.'" 65 Kan. App. 2d at 211 (quoting *Jones*, 300 Kan. at 637).

Once a driver is stopped, the scope and duration of the traffic stop must be no longer than required to effectuate the legitimate purpose of the stop. 65 Kan. App. 2d at 213 (citing *State v. DeMarco*, 263 Kan. 727, 733, 952 P.2d 1276 [1998]; *Terry v. Ohio*, 392 U.S. 1, 19, 88 S. Ct. 1868, 20 L. Ed. 2d 889 [1968]). "[T]he legitimacy of the duration of a traffic stop is measured by the time it takes for an officer to ask for, obtain, and record the driver's license, proof of insurance, and vehicle registration; run a computer check; and issue a citation." *Jones*, 300 Kan. at 640. After the officer has confirmed the validity of the driver's license and the objective of the stop has ended, the driver must be permitted to leave without delay or additional questioning unless "(1) the

11

encounter ceases to be a detention and the driver voluntarily consents to additional questioning or (2) during the traffic stop the officer gains a reasonable and articulable suspicion that the driver is engaged in illegal activity." *$28,350 in U.S. Currency*, 65 Kan. App. 2d at 213 (citing *State v. Thompson*, 284 Kan. 763, 774-75, 166 P.3d 1015 [2007]).

For example, in *State v. Mitchell*, 265 Kan. 238, 960 P.2d 200 (1998), after determining the driver, Mitchell, was authorized to drive and the vehicle was his, the officer did not issue a citation or warning but continued to question Mitchell about topics unrelated to the stop. The driver refused permission to search, and the officer indicated he was going to call for a drug dog, regardless of Mitchell's consent, at which time the driver ultimately consented. The Kansas Supreme Court invalidated the seizure. Although the stop was of short duration, the court found it exceeded both the scope and temporal limits of a reasonable detention for a stop for speeding where the officer had no reasonable suspicion that the driver was committing any crime other than the traffic infraction which formed the basis for the original traffic stop. 265 Kan. at 245.

We provide this outline for reasonable suspicion and the scope and duration of the traffic stop not to forecast a decision on these issues, but simply to offer what is, no doubt, a familiar guideline to the district court. It is not up to us, at this juncture, to apply these standards to Trooper Seiler's traffic stop and detention of Fuleki, but simply to acknowledge that these rules still apply within the context of this forfeiture proceeding. Our task is not to apply these standards now, but to determine *when*—from a fairness standpoint—they should apply.

But the district court did not apply these search and seizure standards to Fuleki's traffic stop, because it first considered the issue of Fuleki's standing to assert his claim in the forfeiture proceeding.

12

*Standing to File a Forfeiture Claim*

The district court found that Fuleki must first be an "owner" or "interest holder" as contemplated in K.S.A. 60-4102 to file a claim in the forfeiture proceeding. Because the court found there was no evidence of duress or coercion leading to Fuleki's signature on the voluntary disclaimer of interest form, and because Fuleki voluntarily disclaimed ownership of the defendant currency both verbally and in writing, the court determined he was not an owner or interest holder under K.S.A. 2019 Supp. 60-4111(a) and K.S.A. 60-4102(e) and (j). Because Fuleki was not an owner or interest holder, he could not file a claim. The district court decided: "Only a claimant may contest an illegal search or seizure of the defendant currency. Because Mr. Fuleki is not eligible to be a claimant under K.S.A. 60-4111(a), he has no right to contest the seizure of the defendant currency."

The existence of standing is a question of law. See *Hodes & Nauser v. Stanek*, 318 Kan. 995, 1002, 551 P.3d 62 (2024); *State ex rel. Shawnee County Sheriff's Office v. $551,985.00 U.S. Currency*, No. 102,666, 2010 WL 3211928, at *9 (Kan. App. 2010) (unpublished opinion). A claimant contesting a civil forfeiture bears the burden to establish his or her standing. *State ex rel. Topeka Police Dept. v. $895.00 U.S. Currency*, 281 Kan. 819, 835, 133 P.3d 91 (2006). Standing to challenge a forfeiture proceeding is more limited under the Forfeiture Act than under constitutional standing requirements. See *$551,985.00 U.S. Currency*, 2010 WL 3211928, at *9 ("[T]he standing issue here centers on claimant's statutory standing under K.S.A. 60-4102 and K.S.A. 60-4111(a), which contain specific standing requirements that are stricter than the constitutional Article III requirements . . . .").

The applicable forfeiture claim form statute, K.S.A. 2019 Supp. 60-4111(a) provides that "[o]nly an owner of or interest holder in property seized for forfeiture may file a claim, and shall do so in the manner provided in this section." The terms "interest

13

holder" and "owner" are defined within the Forfeiture Act in K.S.A. 60-4102(e) and (j). We need not delve into the precise definitions for our purposes, but suffice it to say a claimant seeking to challenge the forfeiture of property in a Forfeiture Act proceeding must either establish an ownership interest in the property or an interest in the property as a secured party. Being a bailee or agent is not enough, but someone must be in substantial compliance with a statute requiring an interest in property to be recorded.

K.S.A. 2019 Supp. 60-4111 also includes specific pleading requirements designed to establish a claimant's standing and provide notice to the concerned government agency to allow the agency an opportunity to investigate potential property exemptions, to eliminate false claims, and to allow the agency an opportunity to substitute nonexempt property for exempt property. *State v. One 1995 Chevrolet Caprice Classic/Impala SS*, 53 Kan. App. 2d 35, 38, 382 P.3d 476 (2016). The pleading requirements of K.S.A. 2019 Supp. 60-4111(a), involving timing and receipt, are not at issue here, as the parties do not dispute whether Fuleki's initial written claim was timely filed or received by the appropriate parties.

But the parties do disagree about the adequacy of Fuleki's pleading to establish his standing under the requirements of K.S.A. 2019 Supp. 60-4111(b). This section of the statute requires the claimant to sign under penalty of perjury and set out "the nature and extent of the claimant's interest in the property; and . . . a detailed description of when and how the claimant obtained an interest in the property." K.S.A. 2019 Supp. 60-4111(b)(3), (4). Although since 2018 K.S.A. 60-4111(c) now authorizes substantial compliance with this portion of the pleading requirement, rather than strict compliance, neither the Kansas Legislature nor the appellate courts have defined "substantial compliance" in the context of the Forfeiture Act.

Further complicating this question is that since the amendment of the Forfeiture Act in 2018, it has allowed a claimant "to assert the right against self-incrimination in a

14

claim." K.S.A. 2018 Supp. 60-4111(d); see *Junction City Police Department v. $454,280 in U.S. Currency*, 2018 WL 4939366, *8-9 (Kan. App. 2018) (unpublished opinion). But the outcome of the intersection of substantial compliance in pleading with the assertion of a Fifth Amendment right in a forfeiture claim remains open-ended, and is an issue we need not reach here.

Whether Fuleki has standing under K.S.A. 2019 Supp. 60-4111(b) and (c) considering his assertion of his right against self-incrimination under K.S.A. 2019 Supp. 60-4111(d) is a question of law to be determined by the district court. Although the district court here did, during its hearing, acknowledge to some degree that Fuleki was allowed to assert his right against self-incrimination, the court did not articulate either orally or in its journal entry how Fuleki's assertion of that right lacked substantial compliance with K.S.A. 2019 Supp. 60-4111(b). Regardless, the district court approached the issue of Fuleki's standing under K.S.A. 2019 Supp. 60-4111 prematurely, and the basis for our finding lies in another type of interest. That is, that Fuleki—and only Fuleki—has standing to assert a constitutional claim for any possible illegal search or seizure.

*Standing to Assert a Constitutional Search or Seizure Claim*

In sum, we have here a driver-only occupied vehicle driven on a highway late at night when it was stopped by a law enforcement officer, the driver detained, the vehicle searched, and the contents of a suitcase seized—all actions along a continuum which culminated in a civil forfeiture proceeding. Courts have repeatedly discussed who possesses the right to dispute the legality of that traffic stop and the detention and searches that occur as a result. The novel question becomes: at what point in a civil forfeiture proceeding does this right of dispute arise?

15

For example, as repeatedly articulated in the criminal law context, there is a well-explored expectation of privacy that comes from the lawful possession and control of a vehicle and the associated right to exclude others as the source of standing to challenge the search of an automobile. *State v. Scheuerman*, 314 Kan. 583, 594, 502 P.3d 502 (2022) (citing *Byrd v. United States*, 584 U.S. 395, 405, 138 S. Ct. 1518, 200 L. Ed. 2d 805 [2018]; *State v. Gilbert*, 292 Kan. 428, 432, 254 P.3d 1271 [2011]). That is, the person must be the owner or in possession of the vehicle. *State v. Davis*, 31 Kan. App. 2d 1078, 1082, 78 P.3d 474 (2003) (citing *State v. Epperson*, 237 Kan. 707, 716, 703 P.2d 761 [1985]; *State v. Roberts*, 210 Kan. 786, Syl. ¶ 1, 504 P.2d 242 [1972]). Generally, though, the venerable test to determine whether a person has standing to contest a search is "not whether that person had a possessory interest in the items seized, but whether he had an expectation of privacy in the area searched." *State v. Whitehead*, 229 Kan. 133, Syl. ¶ 2, 622 P.2d 665 (1981).

The record shows that Fuleki was the driver of the vehicle, alone in the car, and asserted that he had a rental agreement in an email, although he was unable to produce it during the stop. The State makes no argument that Fuleki was not the only person in possession and control of the vehicle. So, he was the sole person with the ability to assert a challenge to the initial traffic stop under the Fourth Amendment to the United States Constitution and section 15 of the Kansas Constitution Bill of Rights.

Then, as to Trooper Seiler's 23-minute detention of Fuleki while awaiting the drug canine at the side of the highway, as the individual detained, only Fuleki could contest whether his detention exceeded the scope and temporal limits of the legitimate purpose of the initial traffic stop. See *$28,350 in U.S. Currency*, 65 Kan. App. 2d at 213 (citing *DeMarco*, 263 Kan. at 733). If Fuleki were not permitted to challenge the constitutional limits of this detention—who else possibly could?

16

Having established that Fuleki—and only Fuleki—could challenge the legality of the traffic stop and the detention thereafter, and as the only person in possession and control of the vehicle, he alone could challenge the search of the vehicle. So, we can safely say that only Fuleki possesses standing to challenge the actions of Trooper Seiler's stop, detention, and search of his rental vehicle. Because Fuleki alone has standing to contest the actions which ultimately led to the seizure of the currency—it is then patently unreasonable to bar him from the courthouse before allowing him to assert any such constitutional claims, if he has them. This is where the district court erred, however, as his motion to suppress was never substantively addressed.

*Addressing The Exclusionary Rule within a Forfeiture Proceeding*

The district court simply skipped over Fuleki's challenge to the legality of the traffic stop and detention to find that because he was not eligible as a claimant under K.S.A. 2019 Supp. 60-4111(a), he then had no right to contest the seizure of the currency. We disagree with this procedure. While a Kansas court has not yet reached the issue, federal courts have found that a loss of standing to challenge a search cannot be brought about by illegal police conduct. For example, in a federal forfeiture proceeding, it was established that Jim Floyd was proceeding through airport screening with multiple pieces of luggage, including a duffel bag that contained currency. *Floyd v. United States*, 677 F. Supp. 1083, 1085 (D. Colo. 1987), *rev'd on other grounds*, 860 F.2d 999 (10th Cir. 1988). After interactions with security, law enforcement eventually took the bag, and Floyd then stated he had no claim to the duffel, and no criminal charges were filed against him. Floyd then filed a motion under Federal Rule of Criminal Procedure 41(e) seeking the return of his illegally seized property, which the government opposed in part based on his earlier disclaimer. The federal district court ultimately found no warrant exception applied to validate the search of Floyd's luggage; and although the government claimed he voluntarily abandoned the bag, the court found the abandonment exception to the fourth amendment did not apply because the government illegally searched the bag

17

before Floyd disclaimed ownership in the property. Because the disclaimer followed the improper law enforcement conduct, the court ruled Floyd had standing and granted his motion for the return of the seized property. 677 F. Supp. at 1091.

Using a similar rationale, although in a criminal suppression hearing, in *United States v. Labat*, 696 F. Supp. 1419 (D. Kan. 1988), James Labat's luggage was seized at the airport by law enforcement, removed to a different location, eventually searched, and law enforcement seized currency and other items from inside the luggage. Labat did not disclaim ownership of the bag before its seizure by the officers, but after the officers told him they suspected the bag contained a controlled substance, he said he did not "'even know whose bag it [was].'" 696 F. Supp. at 1422. In his motion to suppress in his criminal prosecution, the district court found Labat's belated disavowal of ownership of the bag was an involuntary act precipitated only by the agents' unlawful conduct in detaining the bag. The court suppressed the evidence discovered in the bag, and suppressed all items seized as fruits of law enforcement's illegal search. 696 F. Supp. at 1426.

Although we acknowledge these federal courts' analyses are applied in the context of federal rules and in one criminal case, we believe the logic holds true. We offer no judgment on whether the law enforcement officers acted illegally in this instance but require the issue be considered before dismissing Fuleki's claim on standing grounds. Where no other person could assert his right to challenge his traffic stop and detention, Fuleki must be afforded the opportunity to do so.

On remand, then, the district court must examine the legality of the actions of law enforcement, through his motion to suppress, before it considers Fuleki's standing to assert his claim under K.S.A. 2019 Supp. 60-4111. If the district court were to find the trooper's actions unconstitutional, there would be no legal basis for the seizure of the currency and the forfeiture action would assumedly be dismissed. Multiple federal cases

18

illustrate as much. See, e.g., *$39,440.00 in U.S. Currency*, 39 F. Supp. 3d 1169 (claimant in forfeiture action moved to suppress evidence of the defendant currency seized during traffic stop; district court found although officer had reasonable suspicion for the initial traffic stop, the officer lacked reasonable suspicion to extend the stop to allow a search by the drug detection dog, and granted claimant's motion to suppress); see also *United States v. $32,750 in United States Currency*, 200 F. Supp. 3d 1132 (D. Nev. 2016) (granting claimant's motion to suppress in forfeiture proceeding, finding police officer lacked reasonable suspicion to prolong valid traffic stop); *United States v. $9,230.00 in U.S. Currency*, 58 F. Supp. 3d 945 (D. Neb. 2014) (claimant in forfeiture case filed motion to suppress; district court conducted a suppression analysis first, finding the search was reasonable, but forfeiture was not appropriate because the officers failed to establish a nexus between the seized currency and criminal activity). On the other hand, if the trooper's actions were found to be legal, the forfeiture proceeding would continue.

On a review of the record, we note that Fuleki also contests the voluntariness of his disclaimer on appeal, but he did not clearly articulate the issue in his motion to suppress before the district court. Despite the lack of briefing on the topic, the district court addressed voluntariness of the disclaimer at the motion hearing, but primarily through the narrow lens of whether Fuleki willingly relinquished any rights he had to the currency which would prevent him from filing a claim under the Forfeiture Act. It did not necessarily analyze voluntariness from a constitutional perspective. If presented as another constitutional issue in a motion to suppress, presumably the district court would consider that issue as well before deciding Fuleki's standing under the Forfeiture Act.

Reversed and remanded with directions.